**Clelia V. RICCARDI**

v.

**Cynthia A. RIVERS et al.**

**No. 95–529–Appeal.**

Supreme Court of Rhode Island.

Jan. 28, 1997.

Ronald Bonin, David C. Moretti, Cranston, for Plaintiff.

Charles N. Renihan, Jr., for Defendants.

**OPINION**

PER CURIAM.

The plaintiff, Clelia V. Riccardi (plaintiff), appeals from the denial of her motion for a new trial following a jury verdict rendered in favor of the defendants, Cynthia A. and Frank Rivers. A panel of the court heard this matter pursuant to an order directing the parties to appear and show cause why the issues raised on the appeal should not be decided without further briefing and argument. We have reviewed the record and the memoranda submitted by the parties. We perceive no cause to delay our resolution of this appeal and shall therefore proceed to decide the matter at this time.

On September 24, 1988, the parties were involved in an automobile accident at the intersection of Oaklawn and Wilbur Avenues in Cranston, Rhode Island. In August 1991 plaintiff filed a complaint in Rhode Island Superior Court, seeking damages for personal injuries allegedly caused by defendants' negligent operation of a motor vehicle. The case proceeded to trial and a jury returned a verdict for defendants. After plaintiff's new-trial motion was denied, she appealed to this court.

■ The plaintiff raises two issues on appeal. First, she contends that the trial justice erred in not investigating her claim that the court clerk improperly communicated in a nonverbal manner with the jury during the course of the trial. The plaintiff claims that the clerk was gesticulating, laughing, and smirking during plaintiff's examination of witnesses and during the closing arguments, thereby communicating "an image of disbelief and distrust to the jury" regarding the merits of plaintiff's case. The plaintiff brought this situation to the attention of the trial justice at the close of the evidence and before his charge to the jury. The trial justice, in addressing the matter, responded:

"I can only tell you, obviously, I did not see anything. [This clerk] has been with me for several years and this is the first time I can ever recall in the seven or eight years he's been associated with me that anybody has complained. This surprises me that something like that would have been apparent. Personally, I rather expect, to the extent he may have grimaced or made a comment to the sheriff, it surely would have been lost on the jury. They were paying attention to the case. That's all I can tell you."

It is significant that plaintiff did not then suggest that the trial justice initiate any kind of investigation or do anything else in response to these allegations. In particular, plaintiff did not move for a mistrial, did not ask the trial justice to question the jury, and did not request the court to give the jury any type of curative instruction concerning this situation. On the contrary, plaintiff said nothing further about the matter until the hearing on her unsuccessful motion for a new trial after the jury returned a verdict against her on the merits of her complaint.

■ In these circumstances we believe that plaintiff cannot now claim on appeal that the trial justice committed reversible error in failing to investigate *sua sponte* the alleged actions of the smirking clerk. Although the trial justice is responsible at all times for maintaining appropriate decorum in his or her courtroom, trials are capable of eliciting the full range of human emotions from some of or all those who are present. These include facial gestures, the shaking of heads, and other spontaneous displays of emotion in response to the evidence and arguments presented. Parties, jurors, witnesses, spectators, court employees, and even judges are all susceptible to these normal human reactions to what occurs in court. Moreover, it would be unreasonable to require that all persons in the courtroom remain stone-faced and emotionless throughout the course of a trial. And we decline to mandate that a trial justice stop the trial and initiate an investigation whenever there is an allegation that some person in the courtroom may have communicated nonverbally with the jury or with another person in front of the jury.

■ On the other hand we expect, and the interests of justice require, that all court personnel, not just the trial justice, exhibit a high degree of professional conduct at all times during all court proceedings. The trial justice who presides over a particular case should exercise complete impartiality during the course of the trial. Thus, we have held that the trial justice should not communicate his or her opinion on the weight of the evidence or the credibility of witnesses to the jury. *See, e.g., State v. Johnson,* 667 A.2d 523, 528 (R.I.1995). Court clerks, sheriffs, and other personnel who are subject to the court's control are likewise prohibited from engaging in such communication. Because the clerk usually sits in close proximity to the trial justice, is highly visible to the jury, and is identified with the court itself, he or she is certainly among those court personnel who are obliged to conduct themselves responsibly and without prejudice to the parties' rights to a fair and impartial trial. Indeed, one of the many functions of the trial justice is to ensure the integrity of the proceedings and the impartiality of the jury and to take seriously any claims of misconduct by any court personnel that, if true, would be capable of compromising the fairness of the trial process or the jury's disinterested consideration of the evidence.

■ However, before we would mandate that a trial justice initiate a *sua sponte* investigation into an alleged instance of one or more court personnel engaging in improper nonverbal communication with the jury, we

would first require that the trial justice be satisfied that any alleged actions of this sort would be capable of undermining the jury's impartiality or otherwise seriously prejudicing a party's case. But we do not believe the trial justice should be required to embark on potentially time-consuming and distracting investigative forays into every alleged instance of nonevidentiary communication that occurs in the courtroom—unless, in the exercise of his or her discretion, the alleged communicative activity would, if established, create an unreasonable risk of contamination or corruption of the trial process.[1]

■ In this instance we believe that the trial justice's handling of this situation was not clearly erroneous. The alleged activity of the smirking clerk, even if it did occur and was observed by the jury, does not appear to us to be the type of behavior capable of unduly prejudicing the jury against plaintiff's case. Although plaintiff submitted an affidavit to us from the jury's foreperson stating that he saw the courtroom clerk talking to another court employee and making gestures indicating disbelief while plaintiff's counsel questioned witnesses, it is not clear from the affidavit whether this juror perceived that the clerk's gestures were directed at anything plaintiff or her witnesses were saying. Indeed, the juror's affidavit admits that he did not know what was being communicated as a result of this observed activity involving the court's personnel. And the affidavit makes no mention of the effect that the gestures may have had on the jury's verdict. Most importantly, although the juror states he observed these gestures during plaintiff's questioning of witnesses, there is no indication that he understood this activity to express incredulity concerning any witness's testimony or plaintiff's case in general. In addition, plaintiff failed to offer any evidence during or after the trial of any jury contamination or prejudice to plaintiff's case that would have necessitated further inquiry by the trial justice. Nor did plaintiff make any contemporaneous motion for a mistrial, for a jury voir dire, or for the trial justice to instruct the jury concerning this situation. Therefore, we do not believe that the trial justice erred in failing to initiate his own investigation into whether the alleged actions of the smirking clerk were perceived by the jury and, if so, whether they improperly compromised the trial process.

■ The plaintiff also claims that the trial justice erred in denying her motion for a new trial. She contends that the evidence presented indicated that the defendants were negligent. If a trial justice "touch[es] the appropriate bases"[2] when considering a new-trial motion, we shall accord it considerable deference. Unless it can be shown that the trial justice "overlooked or misconceived material and relevant evidence or was otherwise clearly wrong," we shall not disturb his or her decision. *Izen v. Winoker*, 589 A.2d 824, 829 (R.I.1991). The trial justice in the present case reviewed the evidence presented and concluded that the jury's verdict "depended upon an assessment of the credibility of the[ ] witnesses" and "at best, in this case reasonable minds could differ." From our review of the record we cannot say that the trial justice was clearly wrong in his determination.

For the foregoing reasons the appeal is denied and dismissed, the trial justice's denial of the new-trial motion is affirmed, and the papers of the case are remanded to the Superior Court.

---

1. *See, e.g., United States v. Gaston–Brito,* 64 F.3d 11 (1st Cir.1995). There, a case agent for the prosecution allegedly pointed to the defendants in view of the jury when a witness disclaimed any knowledge of who was responsible for issuing the death threats in question. Even though we agree with the holding in *Gaston–Brito* requiring the trial judge to investigate such allegations, we find the case before us to be distinguishable because, unlike *Gaston–Brito*, the alleged misconduct by the actor here (the clerk) was not necessarily intended to communicate with the jury on a matter related to the case being tried and would not, even if it were true, tend to be unduly prejudicial to the objecting party's case. Therefore, this is not a *Gaston–Brito* situation.

2. *Long v. Atlantic PBS, Inc.,* 681 A.2d 249, 255 (R.I.1996).