**STATE**

v.

**Thomas VALENTI et al.**

No. 99–41–C.A.

Supreme Court of Rhode Island.

May 14, 2001.

Aaron Weisman, Assistant Attorney General, Virginia McGinn, Special Assistant Attorney General, for Plaintiff.

William M. Walsh, Providence, Joseph Valenti (pro se) Thomas Valenti (pro se), for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

**OPINION**

PER CURIAM.

In these consolidated appeals, Joseph Valenti (Joseph) appeals from a Superior Court judgment of conviction entered against him on one count of assault with a dangerous weapon, to wit, an ax and crowbar, in violation of G.L.1956 § 11–5–2. Thomas Valenti (Thomas) appeals from Superior Court judgments of convictions entered against him on one count of simple assault in violation of § 11–5–3 and one count of resisting arrest in violation of G.L.1956 § 12–7–10. We ordered the parties to appear and show cause why their appeals should not be summarily decided. After hearing counsel and considering their legal memoranda, we conclude cause has not been shown, and we proceed at this time to resolve the appellate issues presented in the consolidated appeals.[1]

---

1. Joseph was represented by counsel at trial and now represents himself *pro se* on appeal.

# I

## Facts

Theodore Bibeault (Theodore) and his wife Dawn Bibeault (Dawn) had been tenants of Joseph, who was the landlord of rental property at 1775 Putnam Pike in Chepachet. Joseph successfully had brought an eviction action against Theodore and Dawn, and both were ordered to leave the Putnam Pike property by June 12, 1997.

On June 7, 1997, Theodore and Dawn returned to their apartment on Putnam Pike, along with their son and a friend, Adam Ayotte. As Theodore and Dawn attempted to open their apartment door, Thomas arrived and began screaming profanities at Dawn. He then reached out and grabbed Dawn's throat, temporarily choking her. As Theodore moved to protect Dawn, Joseph approached Theodore with a thirteen-inch hand ax and a lug wrench. Joseph then swung the ax at Theodore, barely missing him. At this point, Theodore and Dawn rushed away and called the police.

Sergeant David LaPlante (Sergeant LaPlante) was the first police officer to arrive at the Putnam Pike property. Dawn informed Sergeant LaPlante that Thomas had choked her. Thomas then, while reaching into his pocket, began to walk towards Dawn. After Sergeant LaPlante told Thomas to remove his hand from his pocket, Thomas pulled out an object. Sergeant LaPlante warned Thomas to drop the object and then grabbed Thomas's hand, at which point Thomas attempted to leave the scene. After Sergeant LaPlante grabbed Thomas's arm again, Thomas wrestled with the officer. During this altercation, Joseph approached Sergeant La-

Plante, ignored his warnings to stay away, and unleashed several colorful expletives at him. At this point, Patrolman David Piccirillo (Patrolman Piccirillo) arrived and, at Sergeant LaPlante's direction, arrested Joseph. Sergeant LaPlante then was able to subdue Thomas and place him under arrest, although Thomas continued to struggle with him.

Joseph was charged by criminal information with one count of disorderly conduct in violation of G.L.1956 § 11–45–1(a) and one count of assault with a dangerous weapon in violation of § 11–5–2. Although he was convicted on both counts, the trial justice set aside the conviction for disorderly conduct and dismissed the charge. Accordingly, Joseph appeals only his conviction for assault with a dangerous weapon. Thomas initially was tried in district court for assaulting Dawn in violation of § 11–5–3, for disorderly conduct in violation of § 11–45–1, and for resisting arrest in violation of § 12–7–10. He was acquitted of disorderly conduct, but the trial justice found him guilty on the simple assault and resisting arrest charges. Thomas then appealed to the Superior Court for a *de novo* jury trial and after trial was again convicted on those charges. He also appeals to this Court.

# II

## Thomas Valenti's Appellate Contentions

 Thomas raises numerous points of error on appeal to this Court, although most merit little discussion. Thomas contends that the trial justice erred in denying his motion for a new trial because there was no legally competent and credible evidence to support the verdicts for

---

Thomas represented himself at trial and now is represented by counsel on appeal to this Court. We refer to various individuals in this case by their first names for purposes of convenience and, in doing so, no disrespect is intended.

simple assault and resisting arrest. We disagree. In ruling on a motion for a new trial, the trial justice acts as a thirteenth juror and independently examines the credibility of the witnesses and the weight of the evidence. *See State v. Snow,* 670 A.2d 239, 243 (R.I.1996); *State v. Banach,* 648 A.2d 1363, 1367 (R.I.1994). We discern ample evidence from the record to support both Thomas's convictions and, thus, conclude that the trial justice properly denied Thomas's motion for a new trial. Accordingly, Thomas's separately raised allegations that there was insufficient evidence to support a verdict for simple assault and resisting arrest also must fail.

■ Thomas also contends that the trial justice made numerous derogatory comments throughout the trial that were greatly prejudicial to him. The only statement that Thomas properly objected to was the trial justice's comment that he would not let Thomas "abuse" a witness by excessive and irrelevant cross-examination. This comment by itself fails to reveal any expressed opinion by the trial justice concerning the truthfulness of the charges leveled against Thomas, nor about the credibility or proper weight to be given to the evidence. *See Riccardi v. Rivers,* 688 A.2d 302, 304 (R.I.1997). The trial justice, we also note, gave cautionary instructions to the trial jury about the necessity for his admonishing the conduct of the *pro se* defendant. Under these circumstances, there was no prejudice. *See Riccardi,* 688 A.2d at 304; *Cavanagh v. Cavanagh,* 118 R.I. 608, 622, 375 A.2d 911, 917–18 (1977).

■ Thomas also avers that the trial justice "improperly limited" his and Joseph's cross-examination. Thomas, of course, lacks standing to raise any alleged violation of the codefendant Joseph's constitutional rights. As for himself, Thomas maintains that when the trial justice interrupted his cross-examination of Dawn and admonished him to conduct a "relevant" cross-examination, that action on the part of the trial justice effectively served to limit his right to cross-examine Dawn. We have held that once sufficient cross-examination of a witness has been allowed and satisfies constitutional safeguards, any further cross-examination of that witness is left to the sound discretion of the trial justice, and whose discretion will not be disturbed absent clear abuse. *See State v. Bustamante,* 756 A.2d 758, 765 (R.I.2000); *State v. Botelho,* 753 A.2d 343, 345–46 (R.I. 2000). In this case, the record reveals that Thomas had been given more than ample time, latitude, and opportunity to cross-examine Dawn.

Thomas further contends that the trial justice additionally erred by refusing to permit him to introduce evidence of prior bad acts allegedly committed by the Bibeaults. We discern no merit in this alleged error. Under Rules 403 and 404 of the Rhode Island Rules of Evidence, the proffered alleged "bad act" evidence was properly excluded.

■ Thomas also argues that certain of the prosecutor's statements made during closing arguments violated the "self-incrimination clause of the Fifth Amendment to the Federal Constitution and the privilege under the State Constitution." At trial, it was Joseph's counsel who first introduced Joseph's post-arrest silence as part of a trial strategy that was purportedly intended to demonstrate that Joseph was not given the opportunity by law enforcement to explain his version of events. During cross-examination of Patrolman Piccirillo, Joseph's counsel asked the following questions:

"Q: And when—and then you never—strike that. Who took him [Joseph] to the station?

"A: I did, sir.

"Q: Did you give him any—did you give him his rights?

"A: Yes, sir.

"Q: He didn't say anything in the car?

"A: After I read him his rights, he didn't say anything. As a matter of fact, when I got back to the station, we had to look up old reports to get *their* information. *They* [Thomas and Joseph] wouldn't tell us anything." (Emphases added).

Thomas, we note, failed to object to any of these questions and failed to move to strike the answers to those questions. During his closing argument, Joseph's attorney also contended that "Joe never even got to tell his side of the story." The prosecutor was permitted to respond to defense counsel's statement by telling the trial jury during his closing argument that Thomas and Joseph both had ample opportunity to explain their version of events. In doing so, the prosecutor tailored his comments to the testimony provided by Patrolman Piccirillo and to Joseph's trial lawyer's final argument.

Joseph's counsel timely objected to the prosecutor's statement and moved to pass the case claiming that the prosecutor had in effect commented on the "defendant's failure to say I'm innocent." He expressly moved to pass only on behalf of Joseph, noting that "I'm making this motion for my specific client, but Tom [Thomas] can join in." After the prosecutor countered that Joseph's attorney first elicited the testimony concerning both Joseph's and Thomas's post-arrest silence, Thomas then merely stated: "object." The trial justice denied the motion to pass and overruled all objections.[2]

■ We discern no error. Patrolman Piccirillo's answer to the question posed by Joseph's counsel addressed both Joseph's and Thomas's post-arrest silence. Arguably, Piccirillo's answer went beyond the particular scope of the question, but Thomas, however, failed to move to strike the challenged testimony and offered no proper objection to its admission. Accordingly, the prosecutor was permitted to comment on the trial evidence during his closing argument to the jury. Even assuming that there had been proper objection, the error, if any, was a "trial error," and given the other ample trial evidence supporting Thomas's convictions, we conclude that the comment made by the prosecutor was harmless. *See Brecht v. Abrahamson,* 507 U.S. 619, 629–30, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353, 367 (1993).[3]

## III

### Joseph Valenti's Appellate Contentions

■ Joseph also proclaims a litany of allegations, including that his right against self-incrimination was violated for similar reasons as advanced by Thomas. First, we discern no violation of Joseph's right against self-incrimination under the United States and Rhode Island Constitutions. It was Joseph's counsel who first inquired into Joseph's post-arrest silence during examination of Patrolman Piccirillo, evidently in furtherance of a trial strategy that was intended to portray the police as neglect-

2. It should be noted that the prosecutor never did refer to Thomas's failure to take the stand at trial.

3. In addition, Thomas contends that his sentence was "excessive and unjustified." Yet, under Rule 35 of the Superior Court Rules of Criminal Procedure, a defendant must file a motion to correct or decrease a sentence in the Superior Court before appealing a sentence to this Court. *See State v. McVeigh,* 660 A.2d 269, 276 (R.I.1995); *State v. Baptista,* 632 A.2d 343, 345 (R.I.1993). Since Thomas has not filed a Rule 35 motion, this contention is not properly before us.

ing his client's version of the incident. The prosecutor, during his closing argument, was permitted to respond that Joseph did in fact have ample opportunity to tell his version of the incident after he was arrested. The prosecutor, we note, tailored his comments to the testimony of Patrolman Piccirillo given in response to the questions posed by Joseph's counsel. In light of *United States v. Robinson*, 485 U.S. 25, 33, 108 S.Ct. 864, 869, 99 L.Ed.2d 23, 31–32 (1988), and *State v. Summerour*, 107 R.I. 42, 46, 264 A.2d 329, 331 (1970), there was no error.

Joseph additionally contends that there was insufficient evidence to sustain the guilty verdict against him on the charge of assault with a dangerous weapon, and that the arresting police officer lacked probable cause to arrest him. We disagree. The testimony of Dawn, Theodore, Ayotte and Sergeant LaPlante constituted more than sufficient evidence to convict Joseph on the charge of assault with a dangerous weapon. Furthermore, the information that was personally related to Sergeant LaPlante at the scene of the crimes, as well as Joseph's behavior at the scene, more than established the probable cause required to permit Joseph's arrest.

Joseph further alleges that the trial justice erred when he precluded the jury from observing certain photographs; that the trial justice unreasonably limited Joseph's cross-examination; that the trial justice "unfairly questioned" one witness and stopped her from answering questions; that the trial justice improperly denied the introduction of "prior bad acts" of the Bibeaults; and that the trial justice made improper statements about Thomas's representation of himself. Joseph also argues that the judge favored the prosecutor and discredited the defendants "and/or their witnesses and evidence." In addition, Joseph proffers a series of vague allegations, including that the trial justice violated trial court procedures and judicial ethics, that he ignored certain defense motions, and that he denied Joseph the opportunity to make a complete opening statement. We perceive no merit in any of his allegations.

## IV

### Conclusion

For the reasons heretofore set out, we deny the consolidated appeals of both Joseph and Thomas Valenti. The judgments of convictions entered in the Superior Court are affirmed, and the papers in the consolidated cases are ordered to be returned to that court.