## Thomas S. MICHALOPOULOS

v.

## C & D RESTAURANT, INC., d/b/a "Eddie and Conrad's Fine Foods."

No. 2002–460–Appeal.

Supreme Court of Rhode Island.

May 6, 2004.

Rebecca Tedford Partington, Paul S. Cantor, Providence, for Plaintiff (C & D Restaurant).

Joseph C. Salvadore, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

Joseph C. Salvadore, Esq., counsel for the defendant, C & D Restaurant, Inc., d/b/a "Eddie and Conrad's Fine Foods," appeals from a Superior Court order imposing a monetary sanction against him pursuant to Rule 11 of the Superior Court Rules of Civil Procedure. This case came before the Court for oral argument on March 2, 2004, pursuant to an order directing all parties to appear and show cause why the issues raised in this appeal should not be decided summarily. After considering the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons stated below, we affirm the imposition of the monetary sanction.

The underlying cause of action that generated this sanction is a premises liability claim filed by plaintiff, Thomas S. Michalopoulos, for injuries allegedly suffered at defendant's restaurant. After a trial in Superior Court, the jury returned a verdict apportioning 80 percent of the negligence to plaintiff and 20 percent to defendant. The plaintiff moved for a new trial and/or an additur on the issue of damages

only. The trial justice granted plaintiff's motion for a new trial; granted plaintiff's motion for an additur; and reapportioned the comparative negligence, finding plaintiff 40 percent negligent and defendant 60 percent negligent. The defendant appealed. This Court, however, denied the appeal and remanded for a new trial, but only on the issue of comparative-negligence apportionment.[1] *See Michalopoulos v. C & D Restaurant, Inc.*, 764 A.2d 121 (R.I.2001).

The new trial commenced on December 3, 2001 before a second trial justice. At the conclusion of the trial on December 7, 2001, the jury returned a verdict assessing liability at 39 percent for plaintiff and 61 percent for defendant, nearly identical to the trial justice's apportionment in the first trial. On December 12, 2001, defendant moved for a new trial and, subsequently, filed a memorandum asserting ten arguments in support thereof, one of which alleged judicial misconduct.

The defendant's judicial misconduct argument was based on a claim that the trial justice made improper and prejudicial nonverbal gestures during its counsel's closing argument. On December 13, 2001, the trial justice heard the arguments on defendant's motion for a new trial; however, she recused herself from that portion of the motion relating to judicial misconduct, instead referring that matter to the Presiding Justice of the Superior Court. The Presiding Justice, in turn, informed the parties in a letter dated February 28, 2002, that he would conduct an evidentiary hearing on March 20, 2002. By separate let-

ters dated March 4, 2002, defendant advised both the Presiding Justice and the trial justice that it was withdrawing the judicial misconduct issue from its motion and, therefore, the scheduled evidentiary hearing would not be necessary. Considering defendant's allegations of misconduct "serious" and possibly requiring further action pursuant to Article VI, Canon 3D of the Supreme Court Rules on Judicial Conduct,[2] the Presiding Justice, by letter dated March 25, 2002, rejected defendant's suggestion that further proceedings were not necessary. Accordingly, he set another hearing date. The Presiding Justice's letter also cautioned that "[i]f the allegations are not supported by evidence or by the record of the trial, appropriate sanctions under Rule 11 of the Superior Court Rules of Civil Procedure may be considered."

The evidentiary hearing on defendant's motion for a new trial on the ground of judicial misconduct took place on May 6, 2002. Defense counsel, Joseph C. Salvadore (Salvadore), began his testimony by explaining that he faced the jury, and not the trial justice, during his closing argument in the remanded trial. He said that two jurors seemed to concentrate on the trial justice for a period, which he found "unusual." After the jury was charged and then excused for deliberations at about 12:30 p.m., Salvadore's secretary/paralegal, Shannon Sumner, who attended closing arguments, apparently fueled his suspicions. Salvadore testified that Sumner conveyed to him on their way out of the courtroom that, as he delivered

---

1. The trial justice had not allowed defendant the opportunity to assent to the additur, as required. Therefore, we provided defendant the opportunity to accept the additur, resulting from the trial justice's reassessment of comparative negligence, before remand would occur. That proposal, apparently, was not accepted.

2. Article VI, Canon 3D.1.(a) of the Supreme Court Rules on Judicial Conduct provides that "[a] judge who receives information indicating a substantial likelihood that another judge has committed a violation of this Code should take appropriate action."

his closing, the trial justice had nonverbally communicated with the jury in a number of ways, all of which she perceived as the trial justice's negative reaction to his summation.[3] She testified that the trial justice "was rolling her eyes, she would shake her head, she would lean back in her chair and look up at the ceiling and shake her head, she would purse her lips together as in a smirking gesture." According to Sumner, the trial justice did not make these gestures when plaintiff's counsel presented his final argument. Despite receiving this information immediately after the jury was excused to deliberate, Salvadore did not request that the trial justice offer a curative instruction or otherwise investigate Sumner's observations.[4] At approximately 4:30 p.m. that day, the jury returned its verdict.

Sumner also said that she had asked Attorney Patrick Dougherty, who attended the closing argument at Salvadore's prompting, about the conduct on the bench. His response, according to Sumner, was that the trial justice "doesn't like Joe [Salvadore]." But when Dougherty testified as a defense witness, he contradicted Sumner's account. Dougherty maintained that Sumner questioned him before closing arguments on the subject of objections and overruling objections during witness examinations, rather than on the trial justice's behavior during final arguments.

Dougherty's testimony also conflicted with Salvadore's testimony. Salvadore testified that he telephoned Dougherty on Saturday, the day after the trial ended, to talk with him about the verdict and, further, that this was the first conversation the two had had after the verdict. During that conversation, Salvadore said that Dougherty volunteered that the trial justice had been making improper gestures during his closing argument and that the trial justice "f * * * hates you." Salvadore testified that the day before closing arguments he had suggested to Dougherty that he attend because the two had been working together on another premises liability matter that raised similar issues. He disavowed enlisting Dougherty to concentrate on any specific aspect of the closing arguments, including the trial justice's reactions.

Dougherty, on the other hand, testified that Salvadore had asked him, after the cross-examination of the final witness and before closing arguments, to "let me know how the Judge reacts [to my closing], because that will give me a gauge as to how she likes my argument." Dougherty also disputed that the first conversation he had with Salvadore about the closing arguments was on Saturday. Dougherty was certain that he telephoned Salvadore at 5:13 p.m. on Friday, just after the verdict was given, and spoke with Salvadore for thirteen to fourteen minutes. He testified that during that conversation, Salvadore told him that the trial justice acted improperly, that he would be filing a motion for a new trial on the ground of judicial misconduct, and that he had already done

3. Privy to Salvadore and Sumner's conversation were defendant's representatives Dennis Langevin and Conrad Langevin, and a defense witness, Joan Glenhill, all of whom were present during closing arguments. Salvadore testified that these individuals confirmed, to varying degrees, the substance of Sumner's observations at that time. Only Dennis Langevin, however, testified at the hearing. His testimony was brief and revealed merely that he saw the trial justice "roll[] back in her chair and look up in the ceiling."

4. Salvadore was asked on direct examination whether he had the opportunity to request a curative instruction from the trial justice. He responded that he did not have an occasion to do so because "[t]he jury had already had the case at that time."

the research.[5] During Salvadore's summation, Dougherty did see the trial justice roll her eyes "in some respect," move her head, raise her eyebrows, lean back in the chair and look at the ceiling, and purse her lips. However, his testimony indicates that he neither understood this conduct as a negative reaction to Salvadore's argument nor believed that it had any effect on the jury. Salvadore himself admitted on cross-examination that he had no specific evidence about what impact the trial justice's conduct had on the jury.

On May 30, 2002, the Presiding Justice issued a written decision denying defendant's new-trial motion. He found that defendant failed to show that the alleged conduct prejudiced the jury. In addition, he ordered, pursuant to Rule 11, that Salvadore pay $1,000 to the registry of the Superior Court as a sanction.[6] On June 10, 2002, defendant filed a motion to vacate the order imposing the Rule 11 sanction and, the following day, filed a motion seeking leave to submit polygraph examination results of Salvadore and Sumner with respect to their testimony. On June 24, 2002, these motions were heard and denied.

■ On August 2, 2002, the trial justice filed her decision denying defendant's motion for a new trial on the nine remaining grounds. The parties, however, subsequently settled the underlying cause of action and a dismissal stipulation was entered on August 27, 2002. Nonetheless, defense counsel appealed from the order in which the Presiding Justice imposed Rule 11 sanctions. The plaintiff, satisfied by the settlement and not having requested the imposition of sanctions upon defense counsel, informed this Court in its Sup.Ct. R. 12A statement that it had no position in the issue now before us. On March 21, 2003, this Court granted the Attorney General's request to intervene on behalf of the Superior Court. Inasmuch as the underlying claim has been settled, we need not decide the merits of defendant's motion for a new trial on the grounds of judicial misconduct, which the Presiding Justice denied. However, we do address Attorney Salvadore's appeal of the sanction imposed on him.

■ Salvadore argues that in imposing this sanction, the Presiding Justice "made improper findings of fact, misconstrued the credible evidence, found incredible testimony credible, reached unsupportable conclusions, made unwarranted assumptions, introduced irrelevant, unsubstantiated hearsay evidence and misapplied established Rhode Island law governing Rule 11 sanctions." He also asserts that the imposition of sanctions was procedurally defective, because the evidentiary hearing on the motion was merged with a "sanctions imposition proceeding." Therefore, he

---

5. Dougherty was certain about the timing of this conversation because he had checked his cell phone records before testifying. During the June 24, 2002 hearing on defendant's several motions subsequent to the Presiding Justice's decision in the instant matter, Salvadore said that while he recalled the many other conversations the two attorneys had in the days following the trial, he had forgotten about the conversation that occurred between them the day of the verdict. Salvadore admitted at that time that Dougherty's testimony about the Friday telephone conversation was accurate.

6. In one of the several memoranda Salvadore has submitted to this Court to support his appeal, he declares it "highly unusual and troubling" that the Presiding Justice's seventeen-page decision was neither posted on the Rhode Island Judiciary website nor provided to the state law library for dissemination to various legal research providers. We are not aware of such a requirement, but note that judicial records, including the Presiding Justice's decision, are available to the general public for inspection and copying.

contends that he was denied notice and an opportunity to be heard with respect to sanctions.

■ Rule 11 provides trial courts with broad authority to impose sanctions against attorneys for advancing claims without proper foundation:

> "The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose * * *. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, any appropriate sanction * * *."[7]

"These sanctions have a twofold purpose: to deter repetition of the harm, and to remedy the harm caused." *Lett v. Providence Journal Co.*, 798 A.2d 355, 368 (R.I. 2002) (citing *In re Sargent*, 136 F.3d 349, 352–53 (4th Cir.1998)). When faced with a Rule 11 violation, a trial justice "has the discretionary authority to fashion what it deems to be an 'appropriate' sanction, one that is responsive to the seriousness of the violation under the circumstances and suf-

ficient to deter repetition of the misconduct in question." *Lett*, 798 A.2d at 368.

■ Generally, "an appellate court will reverse a trial court's imposition of a sanction for a litigant's misconduct only if the trial court 'based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Lett*, 798 A.2d at 367 (quoting *Peerless Industrial Paint Coatings Co. v. Canam Steel Corp.*, 979 F.2d 685, 686–87 (8th Cir.1992)). Therefore, this Court will not reverse a trial justice's imposition of sanctions unless the trial justice has abused his discretion in imposing that sanction. *Lett*, 798 A.2d at 367–68.

■ Before determining the appropriateness of the sanction here, we must first consider the nature of the challenged judicial behavior. We continue to recognize that even judges are susceptible to exhibiting normal human reactions in response to events occurring during trials, and that "it would be unreasonable to require that all persons in the courtroom remain stone-faced and emotionless throughout the course of a trial." *Riccardi v. Rivers*, 688 A.2d 302, 304 (R.I.1997) (per curiam). Only the faces on Mt. Rushmore are constantly immobile. Nonetheless, a trial justice "should exercise complete impartiality during the course of the trial" and ensure that the jury's disinterested consideration of the evidence is not compromised.[8] *Id.* Therefore, a party alleging improper nonverbal communication with the jury must

---

7. Additionally, Article V, Rule 3.1 of the Supreme Court Rules of Professional Conduct provides that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."

8. Article VI, Canon 3B.4. of the Supreme Court Rules on Judicial Conduct states that

"[d]uring trials and hearings, a judge should act so that the judge's attitude, manner or tone toward counsel or witnesses will not prevent the proper presentation of the cause or the ascertainment of the truth." Canon 3B.6. of the code further requires that "[a] judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice * * *."

be prepared to demonstrate that the communicative conduct "would be capable of undermining the jury's impartiality or otherwise seriously prejudicing [that] party's case." *Id.* at 304–305.

The record of this hearing is absolutely and utterly devoid of evidence that the claimed conduct either affected the jurors' ability to consider the evidence impartially or otherwise tainted the trial as a whole. That any gestures were intended to express incredulity at Salvadore's closing argument, or defendant's case generally, is not supported by the record. Given the state of the record, a showing of prejudice would have required a herculean effort, especially considering that the jury's verdict virtually mirrored the judgment of the trial justice in the first trial.

*Riccardi v. Rivers* is the seminal case on this issue in this jurisdiction. In *Riccardi*, we were confronted with a claim that a courtroom clerk had smirked, laughed, and gestured while counsel examined witnesses and made closing argument to the jury. Through her counsel, the plaintiff in that case brought her complaints to the attention of the trial justice. This Court pointed out in *Riccardi* that the plaintiff, nonetheless, failed to "suggest that the trial justice initiate any kind of investigation or do anything else in response to these allegations." *Riccardi*, 688 A.2d at 304. We noted further that "[i]n particular, plaintiff did not move for a mistrial, did not ask the trial justice to question the jury, and did not request the court to give the jury any type of curative instruction concerning [the] situation." *Id.* In fact, the plaintiff did not speak of the matter again until the hearing on her motion for a new trial.

In the instant case, Salvadore did not heed any of the suggested actions referred to in *Riccardi* to attempt to confirm or correct his perceptions. Indeed, while plaintiff's counsel in *Riccardi* at least brought the issue of the alleged improper gestures to the attention of the trial justice, Salvadore did not even do that much in the present case. Salvadore maintained at the hearing that he did not have the opportunity to raise the matter because the jury had begun deliberations, but he obviously failed to consider that the trial justice could have attempted to address his concerns by calling the jury back to the courtroom. Although it appears from the record that both parties' counsel spoke with the trial justice in her chambers for ten to fifteen minutes—after Sumner had spoken with Salvadore and during jury deliberations—Salvadore still did not mention that he had received information concerning objectionable behavior. He did not ask the trial justice to question the jury; he did not ask for a curative instruction; and he did not request a mistrial. Indeed, he did not raise the issue until he filed defendant's motion for a new trial.

We hold, therefore, that the Presiding Justice correctly found that Salvadore failed to demonstrate that the challenged conduct improperly compromised the jury and that he properly denied defendant's motion for a new trial.

With respect to the imposition of sanctions, the Presiding Justice examined the evidence and found that Salvadore's allegations of judicial misconduct were based neither in law nor fact. He reviewed the critical testimony of all the witnesses and made determinations on credibility, noting that Dougherty, defendant's own witness, "significantly impeached" Salvadore. He expressed concern about how Salvadore had represented in a post-hearing memorandum that this Court had "sustained" defendant's appeal in *Michalopoulos*, when in fact this Court had "denied" the appeal. *Michalopoulos*, 764 A.2d at 125. He also found "troublesome" the fact that Salvadore had sought to withdraw the charge of

judicial misconduct after an evidentiary hearing already had been scheduled on his allegation. We appreciate and share the concerns of the Presiding Justice.

 Although Salvadore had a duty on behalf of his client to advance all arguments zealously, he also had a duty to advance those arguments in good faith, without factual misrepresentations, and after proper consideration. *See United States v. Cooper,* 872 F.2d 1, 4 (1st Cir. 1989). "[A]n attorney is not free to say literally anything and everything imaginable in a courtroom under the pretext of protecting his client's rights to a fair trial and fair representation." *Id.* at 3. Implicit in Salvadore's failure to take any course of action suggested in *Riccardi* prior to his assertion of judicial misconduct resulting in jury prejudice is the fact that it was made without proper judgment and necessary regard for the truth.

Despite Salvadore's assertion that he had researched the law thoroughly before filing the motion, he clearly did not adhere to the admonitions of *Riccardi.* His reading of that case should have informed him, before filing defendant's new-trial motion, that he should have raised the matter with the trial justice when he had the occasion to, that is, immediately after the challenged conduct was identified. With our opinion in *Riccardi* before him, and aware that he had failed to take any course of action suggested therein, he chose instead to raise the serious allegation of judicial misconduct without regard for "whether the alleged actions of the [trial justice] were perceived by the jury and, if so, whether they improperly compromised the trial process." *Riccardi,* 688 A.2d at 305. Therefore, we cannot agree that he satisfied the requirements of Rule 11 "that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is

warranted by existing law * * *." The appropriateness of the sanction imposed on him rested within the sound discretion of the Presiding Justice. Based on the record before us, we conclude that the sanction was justified, well within his discretion, and moderate under all of the circumstances.

 Finally, although a trial justice has considerable latitude in imposing sanctions, "[a]bsent extraordinary circumstances, due process requires that an offender be given notice and an opportunity to be heard before sanctions are imposed." *Heal v. Heal,* 762 A.2d 463, 469 (R.I.2000) (citing *Boddie v. Connecticut,* 401 U.S. 371, 377–79, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) and *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Here, Salvadore received the requisite notice from the Presiding Justice. In his letter on March 25, 2002 acknowledging Salvadore's attempt to withdraw the defendant's motion for a new trial based on judicial misconduct, the Presiding Justice rejected that attempt, rescheduled the hearing, and informed Salvadore that Rule 11 sanctions might be considered if the trial record or other evidence did not support the accusation. Salvadore had an opportunity to respond to the Presiding Justice's concerns about the allegations, articulated in the Presiding Justice's letter, before the sanctions were imposed. Although the hearing was for the purpose of the new-trial motion, the evidence presented also supported the imposition of sanctions. Moreover, the record reflects that special counsel for the defendant, immediately prior to Salvadore's testimony, confirmed that "there is no Rule 11 motion pending, but I'm proceeding as if there is, based on the Court's letter. So I'm objecting, and then I'm going forward based on, as I perceive

the Court's letter, I must cover those points, and that's what I intend to do." Based on these remarks, we are unconvinced by Salvadore's due-process argument.

For the reasons stated above, the Presiding Justice's imposition of sanctions is affirmed. The papers in this case are remanded to the Superior Court.