DECISION
At issue in this case is an all-too-common practice through which unlicensed[1] attorneys who practice law in out-of-state law firms gain pro hac vice admission to practice law before the Rhode Island courts.
The practice at issue is actually a process consisting of multiple phases. The length of the process and number of phases will vary depending upon the needs of the out-of-state firm. For purposes of illustration and providing context to the matter at hand, a representative overview of the practice follows.
As part of the initial stages of the process, a law firm headquartered in a state other than Rhode Island enters into a space sharing or rental agreement with a local Rhode Island law firm. The agreement allows the out-of-state law firm to utilize the Rhode Island firm's offices for the purpose of conducting depositions, meeting with clients and witnesses, and the like. Sometimes the Rhode Island firm will actually dedicate the space to the out-of-state firm's use. In other instances, such as in the case at *Page 2 
hand, the out-of-state firm will, on an ad hoc basis, utilize the Rhode Island firm's conference room or, occasionally, a vacant office if more space is needed for the then-present purpose. Often, the out-of-state firm sets up telephone service with a Rhode Island area number. Incoming calls are bounced to either an operator who thinks that the out-of-state firm possesses a genuine Rhode Island office or to one who explains to the caller that there is no such office and that the caller must be mistaken about the facts. So, too, and depending upon the circumstances, the out-of-state firm might designate its out-of-state headquarters as the correct mailing address for correspondence, certification of pleadings, and the like. Or, it might designate the Rhode Island firm's address as the mail drop from which that firm then forwards incoming mail to the out-of-state firm. As with the telephone system, the mailing system works well on a good day, and the mail is properly forwarded by the Rhode Island firm to the out-of-state firm's headquarters. On a bad day, the mail drop fails because the post office returns the item to the sender as undeliverable. Other common variations of this scenario include situations in which the out-of-state law firm rents space in an office suite under a space-sharing agreement that may or may not involve other legal practitioners. The out-of-state firm might, for example, rent a private office within the suite but share reception and conference areas with, hypothetically, an insurance broker, a financial consultant, an employment counselor, and/or a private investigation and constable service-rendering a Newhartesque quality to the arrangement.
At some point in this continuum — either before or after making arrangements to have a "local office," the out-of-state firm hires an attorney who has passed the Rhode Island bar exam and has been admitted to practice in Rhode Island. That Rhode Island *Page 3 
licensed attorney may or may not actually be actively engaged in the regular practice of law in Rhode Island.
Once the stage has been set and upon the out-of-state firm's acquiring a client needing representation in Rhode Island, the out-of-state firm's Rhode Island licensed attorney enters an appearance in the pending litigation and, shortly thereafter, applies to the Court to admit one or more of the firm's unlicensed members as pro hac vice counsel to the client. As part of the application, the Rhode Island licensed attorney certifies that pursuant to Rhode Island Supreme Court Art. II, Rule 9, that ". . . I am a member in good standing of the bar of the State of Rhode Island and that I am actively engaged in the practice of lawout of an office located in this state." (Emphasis added.) Generally, it is a senior partner who petitions for pro hac vice admission on the grounds that he or she has a long-standing relationship with the client or has some expertise in the field of law at issue in the case. Sometimes, though, or as the representation progresses, admission is sought for a junior partner or novice associate, the rationale frequently being that his or her participation will free the senior attorneys from the more mundane aspects of the case, such as motion practice, routine discovery proceedings, and the like. Sometimes, the junior partner or associate is offered for admission as part of the firm's effort to introduce him or her to the client and to build an attorney-client relationship between them. Depending upon the needs of the out-of-state law firm, the Rhode Island licensed attorney will petition for the pro hac vice admission of any number of the out-of-state firm's attorneys.
A common and especially troublesome aspect of this practice is for the out-of-state firm to deploy a modified version of the form miscellaneous petition that is *Page 4 
appended to Rule 9 as Exhibit 9-A. Sometimes, the out-of-state firm drops the signature line for the pro hac vice counsel or, in the alternative, leaves it unsigned.[2] Another tack involves modifying the form language by changing the words ". . . and that I am actively engaged in the practice of law out of an office located in this State[ ]" to ". . . and that I am actively engaged in the practice of law in Rhode Island." The former gives the attorney seeking admission a means of dodging the factual representations made in the petition (e.g. his or her long-standing representation of the client, area of expertise, etc.) and capitalizes upon the presenting attorney's own lack of personal knowledge to obscure his or her veracity. The latter allows the out-of-state firm to abandon any pretense of having a local office and resident attorneys. Invariably, the attorneys presenting the miscellaneous petitions argue that these omissions are merely clerical mistakes, but it is hard to imagine how so many legal secretaries, having been instructed to replicate a Court-mandated form, could be capable of making the same scrivener's error.
The overall effect of this practice is to allow unlicensed out-of-state attorneys and their law firms to practice law in Rhode Island — notwithstanding that they lack a working familiarity with Rhode Island law and its courts' practices and procedures.[3] By this justice's observations, this practice is a considered response to the recent amendment of R.I. Sup. Ct. Art. II, Rule 9, which was, in turn, partly a response to the earlier practice in which a local Rhode Island attorney would enter an appearance in pending litigation and *Page 5 
then withdraw from the case after having moved to have an out-of-state attorney admitted on a pro hac vice basis. The facts pertaining to the instant case are as follow.
On May 13, 2005, attorney Adam A. Larson ("Larson"), a Rhode Island licensed attorney of the Boston law firm of Campbell Campbell Edwards Conroy, filed an answer in this case and appeared as counsel for the defendants, Fuji Electric Co, Ltd. and Fuji Electric Corp. of America ("Fuji defendants"). For an address, Larson designated 123 Dyer Street, Providence, RI 02903. His telephone number was designated as (401) 421-5123 — a line that automatically forwards the call to the switchboard at Larson's Boston office. The appearance did not disclose that the offices were actually the offices of the law firm Winograd, Shine, and Zacks PC. Thereafter, on January 16, 2007, Larson filed a pleading bearing the title of PARTIALLY ASSENTED TO MOTION FOR ADMISSIONPRO HAC VICE OF CHRISTOPHER PARKERSON. On behalf of the Fuji defendants, Larson moved to have Christopher Parkerson of Campbell Campbell Edwards Conroy admitted pro hac vice. Larson also filed a MISCELLANEOUS PETITION FOR ADMISSION PRO HAC VICE, an ATTORNEY CERTIFICATION FOR PRO HAC VICE ADMISSION, and a CLIENT CERTIFICATION.
The form of the miscellaneous petition was identical to the form approved by the Supreme Court in Rule 9. On it, Larson identified the grounds for the petition by stating that the case involves product liability law, purportedly Parkerson's field of concentration, and that Parkerson has had a long-standing representation of the Fuji defendants. Larson signed the form, thus affirmatively representing that ". . . [he is] a member in good standing of the bar of the State of Rhode Island and that [he is] actively engaged in the practice of law out of an office located in this state." Although Parkerson *Page 6 
did not sign the petition where it indicates the signature of thepro hac vice counsel must be affixed, Parkerson's name was typed above that signature line.
The Plaintiff, Terence Goodwin (Plaintiff), filed a written objection to the motion and petition. In it, the Plaintiff complained that neither Larson nor Parkerson was genuinely practicing law in Rhode Island in the sense contemplated by Rule 9, that Larson's averment that he is ". . . actively engaged in the practice of law out of an office located in this state" is pre-textual, and that the reason for the admission as communicated to Plaintiff's counsel by telephone was not proper grounds for a pro hac vice admission.[4]
The motion and petition came before the Court for hearing on February 7, 2007 during the morning session of the civil motion calendar. Neither Larson nor Parker appeared at the hearing and, in spite of the substance of the Plaintiff's objection to their motion and petition, they chose to send a younger associate of the firm to argue the matter. Initially, this Rhode Island licensed associate, Christopher Conroy, attempted to convince the Court that Campbell Campbell Edwards Conroy had an office in Rhode Island. When pressed, however, he was required to concede that the firm merely rents conference room space from a local law firm, the name of which escaped him at that moment. He also conceded that Campbell Campbell Edwards Conroy uses that conference space mainly for taking depositions and to prepare for Rhode Island court *Page 7 
appearances. He conceded that none of the firm's attorneys has a desk, filing cabinet, dictating equipment, or computer in the Rhode Island office and further conceded Campbell Campbell Edwards Conroy's 401 area code telephone number automatically forwards calls to its Boston office. When asked where Attorney Larson's office is located, the associate stated: "Attorney Larson, his office is in Boston and he handles a substantial amount of work here in Rhode Island as well."
Upon being asked about Parkerson's long-standing relationship with the Fuji defendants, the associate fared no better. The dialogue between him and the Court went as follows:
 The Court: Now tell me about Parkerson's representation of Fuji Electric.
 Mr. Conroy: Attorney Parkerson is my senior at the office. He's been practicing for approximately ten or so years.
 The Court: You didn't understand my question. Tell me about his representation of Fuji Electric Corporation.
 Mr. Conroy: Your honor, I believe that he not-he hasn't represented Fuji as much as he has the insurance company that insures them.
 The Court: Oh, so what we're really talking about is his long-standing representation of an insurance carrier as opposed to what's laid out here in the petition?
 Mr. Conroy: Well, I don't want to be inaccurate. I don't know to what extent he has represented Fuji Electric specifically. I'm not certain.
 The Court: Has he represented them for more than a year?
 Mr. Conroy: He has been in our office for that amount of time, yes, Your Honor.
 The Court: I said, has he represented them for more than a year?
 Mr. Conroy: I don't believe so, Your Honor.
 The Court: Oh. Has he represented them for, say, six months? *Page 8 
 Mr. Conroy: He has had some involvement with this specific case, although he hasn't appeared in this case because he's not admitted here, your Honor.
 The Court: So, that "long-standing representation" that's here in the miscellaneous petition signed by Larson is not accurate?
 Mr. Conroy: I don't know — well, I don't know that it's completely accurate. He has had some substantial involvement in this case since he's been a member of our firm for the past year or so. He has also had a significant amount of experience in the fields of products liability defense.
 The Court: Tell me about that experience.
 Mr. Conroy: Your Honor, I believe he's been representing products manufacturers for the better part of his legal career.
 The Court: You believe he has, but tell me about it.
 Mr. Conroy: I can't represent to the Court. I'm not 100% sure.
Although they attempted to withdraw the petition for admission pro hacvice from the Court's consideration during the interim between the morning and afternoon sessions, Larson and Parkerson appeared for the afternoon session at the Court's direction. At that time, it became apparent that Larson's familiarity with the physical characteristics of his firm's local office space was sketchy — notwithstanding his certification that ". . . I am actively engaged in the practice of law out of an office located in this state." Larson confirmed that his use of that space has been confined to the purpose of conducting depositions, and, when asked how often he is in Rhode Island for such purposes, he conceded that he had not been in Rhode Island for the last year. In 2004, he used the conference room to inspect a product in the context of a federal court proceeding. He stated that he has used that space "on several occasions." When asked why Parkerson's *Page 9 pro hac vice admission was required, Larson conceded that the objective was to have Parkerson attend depositions when neither Larson nor Conroy was available and to have Parkerson assist Larson in motion practice including researching and drafting motions for Larson's review. Larson also conceded that Parkerson's "long-standing representation of the client" amounted to, at most, 38 days and that his representation was confined to assisting Larson with the pleadings and doing research.
Parkerson's participation in the hearing was limited. However, it was he who made the cheeky request to withdraw the motion and petition,ab intitio, in the event that this justice were to determine that they should be denied, provided, however, that neither the motion nor petition be deemed withdrawn in the event the Court was to determine that they should be granted. As grounds, Parkerson cited the impact that a denial might have on his pro hac vice status in the federal court system. As Parkerson stated, "What I would like, your Honor, is, since the denial is not based upon anything in — or, I don't expect that the denial would be based upon anything in my affidavit[5] that was filed, that you allow us to withdraw the motion."
When questioned about the now obvious inaccuracies in the petition itself, Parkerson represented that he had never read the completed petition prior to its filing but, instead, had left it to Larson and another senior member of the firm to fill out the form properly. Parkerson agreed that it was important to him to know why he was to be admitted pro hac vice but, because of his relationship with his seniors at the firm, he trusted them and felt no need to review the paperwork before it was filed. When asked *Page 10 
specifically about his understanding about the grounds for the petition, Parkerson stated that it was his understanding that he was being brought into the case because
 . . . the case had been on the docket for a period of time, that it needed to be moved along and that some scheduling difficulties had arisen. I was — I had been in the firm for a while, I've proven myself and they thought that this was a case that I could help a client move a case forward to either resolution or trial.
Parkerson, however, had no choice but to admit that he had read the Rhode Island Court Rules. In these rules, the approved pro hac vice form petition appears — a form that quite obviously calls for factual representations concerning the attorney who is proposed to be admittedpro hac vic, as well as the grounds for his or her admission, and which clearly shows a line for that attorney's signature and concomitant certification of those representations. Therefore, when taken in context, Parkerson's acquiescence in the proffer of his certification, albeit typed instead of executed by hand or facsimile, amounts to his certificate that he had read the petition, and that ". . . to the best of [his] knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and . . . is not interposed for any improper purpose. . . ." Super. R. Civ. P. 11.
Upon consideration, it is this justice's determination that the motion and petition for admission pro hac vice should be denied. Larson and Parkerson's representations in the miscellaneous petition are clearly contradicted by the attorneys' statements in open court. Rule 9 allows for the pro hac vice admission of an out-of-state attorney only for special occasions when there is "good cause" to approve the admission; here, Parkerson's purported long-standing relationship with the client is merely an exaggeration of his short-term involvement in the case, and thus does not constitute "good cause." The rented conference room, used infrequently by Campbell Campbell Edwards Conroy *Page 11 
and barren of its equipment or furniture, can hardly be deemed an "office" for purposes of Rule 9. Furthermore, Larson has admitted that he has not even entered the state for any work-related purpose in the past year, which would certainly preclude him from maintaining an "active practice" here. Clearly, Larson and Parkerson's representations in the petition diverge sharply from reality in several respects, and, accordingly, the motion to admit Parkerson pro hac vice is denied.
It is also this justice's determination that the findings herein warrant the imposition of sanctions pursuant to Super. R. Civ. P. 11 (as amended). Rule 11 requires that every paper filed by a represented party be certified by counsel. By so certifying, counsel is affirming "that to the best of [his or her] knowledge, information, and belief . . . [the pleading, motion, or other paper] is well grounded in fact." Here, Larson and Parkerson's filing of the miscellaneous petition is a clear violation of Rule 11, evidenced by several contradictions between the facts proffered in the petition and those later revealed at the hearing. Larson's certification of the inaccurate and disingenuous petition is a violation of Rule 11 and clear grounds for sanctions.
Furthermore, although Parkerson's handwritten signature does not appear on the miscellaneous petition, the Court finds his conduct to be sanctionable as well. At the hearing, he admitted that he has read Rule 9 and, therefore, he should be aware of its requirements including the obvious, albeit not stated, requirement that attorneys seeking pro hacvice admission must sign the petition itself. Allowing Larson to file a petition carrying Parkerson's typewritten name over a signature line and containing clear inaccuracies as to Parkerson's relationship with the client (or failing to ensure that the petition contained no such inaccuracies) runs contrary to Parkerson's duties as an *Page 12 
attorney seeking pro hac vice admission to this court. Rule 9 and the approved forms required Parkerson to sign a petition, in which the factual representations supporting his pro hac vice admission are contained. They also require him to sign the certification in support of that petition and in which he agrees to observe and be bound by the local rules and orders of this Court. It would be illogical to allow Parkerson, who knowingly but without regard for its contents allowed the instant petition to be filed on his behalf, to escape sanctions in this case. In a similar situation, the United States District Court for the Southern District of Indiana, interpreting the pre-1993 version of Fed.R.Civ.P. 11,[6] would not allow an out-of-state attorney to escape sanctions when he was substantially involved in the filing of a baseless defamation claim and appeared in court to argue it, even though the papers were actually signed by local counsel. Blossom v. BlackhawkDatsun, Inc., 101 (D. Ind. 1988) (citing Pavlak v. Duffy, 48 F.R.D. 396,398 (D. Conn. 1969)). Here, Parkerson was aware of the filing of the petition, as it was done on his behalf, and he clearly had the authority to withdraw the petition if he chose to do so. Additionally, his reference to the petition as "our petition" throughout the hearing further demonstrates his ratification of the document.
The Court takes the requirements of Rule 11 seriously, and requires that the attorneys practicing before it (or petitioning to do so) afford its requirements the same level of respect. For an attorney to misrepresent the true nature of his practice in Rhode Island or his connection to the client in the case "`reflects a disregard for the orders and rules of court as well as the professional courtesy that attorneys have a right to expect.'" Painewebber, Inc., v. Can AmFinancial Group, Ltd., 121 F.R.D. 324, 336 (D.Ill. 1988) *Page 13 
(quoting First Interstate Bank of Nevada v. Nelson, No. 80 C 6401, slip op. (N.D.Ill. June 9, 1986)). An "attorney is subject to sanctions, under Civ. R. 11,[7] if the attorney fails to exercise professional judgment properly in accordance with that rule." Utica Mut. Ins. Co. v.Greenberg, 2001 Ohio 1443 (Ohio Ct.App. 2001). The actions of Larson and Parkerson in this matter demonstrate both a lack of respect for the rules of the court and a lapse in professional judgment. Furthermore, the attorneys' decision to send in a young associate unfamiliar with the facts asserted in the petition and who was prepared to provide the Court with misinformation only further demonstrates their cavalier attitude towards the pro hac vice admission process of this Court.
A trial judge "has considerable latitude in imposing sanctions."Michalopoulos v. C D Restaurant, Inc. 847 A.2d 294, 302 (R.I. 2004). The "appropriateness" of such sanctions "rests within the sound discretion of the [trial justice]." Id. Furthermore, "so long as the sanction selected is `appropriate,' Fed.R.Civ.P. 11, the Civil Rules place virtually no limits on judicial creativity." Anderson v. BeatriceFoods Co., 900 F.2d 388, 394 (1st Cir. 1990) (citations omitted). Accordingly, this court finds it here appropriate that attorneys Adam A. Larson and Christopher B. Parkerson pay, as sanctions, the reasonable value of the Plaintiff's attorney's fees[8] incurred in objecting to the motion and petition and in appearing before the Court to press that objection. The Court also finds it appropriate that they pay to the Rhode Island Superior Court the sum of $ 1200 in partial *Page 14 
reimbursement of the judicial resources consumed in responding to their ill-conceived motion and Miscellaneous Petition for Admission Pro HacVice.
This matter shall be scheduled for further hearing on June 13, 2007 at 2:00 p.m. on the questions relating to sanctions. At that time, Parkerson and Larson will be permitted to show cause as to why they should not be sanctioned in accordance herewith. Plaintiff shall supply Parkerson and Larson with an affidavit of attorney's fees one week prior to the date of this hearing. *Page 15 *Page 16 *Page 17 
 CERTIFICATION
I hereby certify that a copy of the within Order was mailed by regular mail, postage prepaid this ____ day of April 2007 to the following counsel of record:
[1] For present purposes, the term "unlicensed" is meant to refer to attorneys who might be licensed to practice law in other jurisdictions but who are not licensed to practice law in Rhode Island.
[2] Rule 9 requires the miscellaneous petition to be accompanied by an attorney certification and a client certification. In addition, the Rule requires that the pro hac vice counsel ". . . shall sign certifications in support of the petition, in substantially the form appended hereto as Exhibits 9-A, 9-B, and 9-C, respectively." Exhibit 9-A (MISCELLANEOUS PETITION FOR ADMISSION PRO HAC VICE) contains a signature line for thepro hac vice attorney thus quite clearly indicating that his or her signature is required on that document.
[3] Putting aside consumer protection and other public policy considerations for the moment, it is the latter that wreaks havoc upon the local practitioners and the Court, wasting their tine and resources when they must track down an out-of-state attorney and respond to improperly constituted pleadings, improperly scheduled motions, improperly crafted orders, attempts to file pleadings by fax, etc.
[4] Apparently, there was a telephone communication between the Plaintiff's and the Fuji defendants' attorneys in which it was explained to Plaintiff's attorney that Parkerson's admission was needed to relieve Larson of scheduling conflicts and that Parkerson would be attending depositions and Court hearings when Larson was not available to do so. It was Plaintiff's contention that this was not proper grounds for admission pro hac vice inasmuch as it reflected Larson and Parkerson's intention to violate Rule 9's prohibition that ". . . any attorney who is granted such leave to practice before a particular tribunal shall not engage in any proceeding, hearing, or trial therein unless there is present in the courtroom or hearing room for the duration of the proceeding, hearing, or trial a member of the bar of Rhode Island who shall be prepared to continue with the proceeding, hearing, or trial in the absence of counsel who has been so granted leave."
[5] Presumably, this was a reference to the attorney certification required by Rule 9, executed by both Parkerson and Larson, and by way of which both Parkerson and Larson agreed to observe the requirements respecting the participation of local associate counsel and agreed that their failure to observe those requirements may result in their disqualification as counsel in the case.
[6] The current Rhode Island Rule 11 mirrors this older version of the Federal Rule 11; although the federal rule was amended in 1993, the Rhode Island rule has not been so changed.
[7] The Rule 11 referenced here is Ohio R. Civ. P. 11, which, like its Rhode Island counterpart, requires the certification of all court papers by counsel or a pro se party. Similarly, under the Ohio rule, "The signature of an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."
[8] This Court notes that pursuant to Super R. Civ .P. 11 and the pre-amended Fed.R.Civ.P. 11-though not under the present, amended Fed.R.Civ.P. 11-reasonable attorney's fees may be awarded sua sponte by the trial justice. *Page 1