| | |
|---|---|
| Kristopher Plante et al. | : |
| v. | : |
| Daniel Stack et al. | : |
| v. | : |
| Bella Restaurant. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2012-319-M.P.
(PC 10-4432)
(Concurrence begins on page 22)
(Concurrence and dissent begins on page 23)
(Concurrence and dissent begins on page 28)

|  |  |
|---|---|
| Kristopher Plante et al. | : |
| v. | : |
| Daniel Stack et al. | : |
| v. | : |
| Bella Restaurant. | : |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**[1]  The defendants, Daniel Stack (hereinafter Stack) and the Disabled American Veterans Department of Massachusetts, Inc. (collectively referred to as the defendants), seek review of three Superior Court discovery rulings related to the litigation in this negligence action.  The defendants request that this Court reverse the rulings of the Superior Court justice:  (1) denying the defendants' motion to compel additional testimony from material fact witnesses; (2) granting the plaintiffs' motion for a protective order limiting the defendants' planned neuropsychological examination of the plaintiff; and (3) revoking the pro hac vice admission of defense counsel.  We granted the defendants' petition for the issuance of a writ of

---

[1] Although four justices have written in this matter, it should be noted that the entire Court is unanimous on every issue before it with the exception of the pro hac vice revocation, concerning which a majority of the Court is in agreement.

certiorari and heard oral arguments on October 2, 2014.  For the reasons set forth herein, we deny the petition for certiorari in part and grant it in part.

# I

## Facts and Travel

In March 2008, plaintiff, Kristopher Plante[2] (plaintiff or Kristopher) was injured in a head-on collision with Stack on Route 102 in Burrillville, Rhode Island.  It is undisputed that Stack operated his vehicle while he was intoxicated, failed to activate his headlights, and crossed the center line in the road, crashing into plaintiff's vehicle.  On July 29, 2010, plaintiffs filed a complaint sounding in negligence against Stack and the Disabled American Veterans Department of Massachusetts, Inc., the owner of the vehicle driven by Stack.  The defendants do not dispute liability insofar as it relates to the accident, but they do dispute Kristopher's claim for damages.

In the complaint, plaintiffs alleged that Stack's negligence has left Kristopher with "severe and permanent injuries to his mind and body" and that the injuries were of such a significant nature that Kristopher could no longer perform his usual activities.  In addition, plaintiffs alleged that Kristopher had suffered a loss of earnings and a permanent loss of earning capacity.  Specifically, plaintiffs allege that Kristopher suffered cognitive difficulties as a result of the accident, including concentration issues during his first year as an undergraduate student at the University of Rhode Island.  The defendants concede that Kristopher suffered orthopedic and head injuries, but they contend that Kristopher has made a nearly complete physical and cognitive recovery.

---

[2] The plaintiff's parents, Timothy and Teresa Plante, are also "plaintiffs" in this matter, as they brought a claim for economic damages stemming from the costs of Kristopher's injuries and subsequent treatment.  References to "plaintiff" will, however, refer solely to Kristopher Plante.

The defendants responded with an answer to the complaint and a third-party complaint for contribution and indemnity against Bella Restaurant. The third-party complaint alleged that Bella Restaurant violated the Dram Shop Act, G.L. 1956 chapter 14 of title 3, when it negligently and/or recklessly served Stack while he was in a state of intoxication as defined by § 3-14-3(c). The defendants further alleged that Bella Restaurant knew, or reasonably should have known, that Stack was visibly intoxicated when it served alcohol to him. On October 11, 2011, defendants petitioned for the admission of Attorney Darrell Mook (Attorney Mook) pro hac vice as associate trial counsel on the grounds that Attorney Mook specialized in dram shop cases and had a long-standing relationship with defendants' insurer. This petition was granted by a Superior Court justice on October 21, 2011.

Kristopher Plante's deposition was taken at the offices of plaintiffs' counsel on April 9, 2012, at about 10 a.m, concluding at about 3 p.m. that same day.[3] At the deposition, Kristopher revealed that his parents divorced in 2009, one year after the accident. Upon learning of the divorce, Attorney Mook asked a series of follow-up questions about the Plantes' living arrangements, to which plaintiffs' counsel objected. The plaintiffs' counsel indicated that the question dealt with an improper subject matter and was an attempt to embarrass the deponent. Over counsel's objection, Kristopher answered that his parents were living together prior to 2009. At other points in the deposition, Attorney Mook asked questions about various matters pertaining to Kristopher's bicycle use, romantic relationships, sexual activity, and religious beliefs.

The depositions of Kristopher's parents, Teresa (Mrs. Plante) and Timothy (Mr. Plante), took place on May 2, 2012, at the offices of plaintiffs' counsel. Mrs. Plante's deposition lasted

---

[3] Excluding an hour lunch break and other short breaks, this deposition lasted about four hours.

about one hour and forty-five minutes, and Mr. Plante's deposition lasted about two hours. Toward the end of Mrs. Plante's deposition, Attorney Mook began to question her about the divorce to ascertain the effect it might have had on Kristopher. The plaintiffs' counsel objected to this line of questioning and expressed concern over its personal nature. Attorney Mook asked if Mrs. Plante could give the reason for the divorce, to which plaintiffs' counsel objected and instructed Mrs. Plante not to answer on the ground that it was not relevant to the case. Asserting that the Plantes' divorce was highly relevant, Attorney Mook asked if she had had a discussion with Kristopher regarding the divorce, to which she gave an affirmative response. When Attorney Mook asked for specifics relating to that conversation, plaintiffs' counsel again objected and instructed Mrs. Plante not to answer. Attorney Mook then reiterated that the divorce was relevant since it could have been a "stressor" in Kristopher's life and could have affected his overall development. Notwithstanding that explanation, plaintiffs' counsel instructed Mrs. Plante not to answer the questions.

Attorney Mook then shifted the questioning toward the potential impact of the divorce on Kristopher, but Mrs. Plante testified that Kristopher was "fine with it." After Mrs. Plante stated that her son seemed "a little slow," based on comments made to her by a friend who was a special needs teacher, Farzana Jalalkhan, Attorney Mook suspended the deposition subject to a reservation of rights on the questions that were not answered upon the instruction of plaintiffs' counsel.

At Mr. Plante's deposition, defense counsel announced that he was going to ask divorce-related questions, to which plaintiff's counsel objected and again instructed the deponent not to answer. Once more, defense counsel explained that he was not trying to embarrass plaintiffs, but that he sought to understand the effect the divorce might have had on Kristopher. Later in the

deposition, Attorney Mook asked Mr. Plante about Mrs. Plante's current living arrangements, specifically about whether she was living with somebody at that time. The plaintiffs' counsel objected and instructed Mr. Plante not to answer on the ground that it had nothing to do with this case "in any conceivable realm." Attorney Mook then asked if Mr. Plante knew Mrs. Plante's friend Farzana, to which Mr. Plante replied that he did. Attorney Mook continued, asking what the relationship was between Mrs. Plante and Farzana and, specifically, whether they were involved in a romantic relationship. The plaintiffs' counsel objected to each question and instructed Mr. Plante not to answer. Subsequent questions regarding Kristopher's feelings about Mrs. Plante's relationship with Farzana were objected to in the same fashion. Attorney Mook concluded that line of questioning by reserving the right to ask those questions if a judge should order Mr. Plante to respond.

On August 2, 2012, following a failed attempt at mediation, defense counsel informed plaintiffs' counsel of his intent to reconvene Mr. and Mrs. Plante's depositions on the issues surrounding the divorce. Defense counsel also notified plaintiffs' counsel that he intended to have Kristopher examined by a neuropsychologist and that he intended to depose two or more of Kristopher's treating physicians. In their August 3, 2012 response, plaintiffs' counsel reasserted that any divorce discussion was irrelevant and put defendants on notice that any further depositions would have to be completed by August 30, 2012, the time set for close of discovery. On August 7, 2012, defendants identified their examining neuropsychologist as Nancy Hebben, Ph.D., and asked that Kristopher attend an examination on September 21, 2012. The plaintiffs agreed to the examination request, but required that it be performed before the close of discovery on August 30th.

On August 9, 2012, defendants filed a motion to compel further deposition testimony of Mr. and Mrs. Plante regarding the reasons for the divorce. On August 20, 2012, plaintiffs filed a motion to appoint a single justice to preside over all future discovery and trial on the ground that discovery had not been properly conducted. The Presiding Justice thereinafter assigned the case to a single justice.

Between August 24 and August 29, 2012, defense counsel deposed three of Kristopher's treating physicians. Sherri Provencal, Ph.D., the doctor who had performed neuropsychological examinations on Kristopher shortly after the accident in May 2008, was deposed on August 24, 2012. Over plaintiffs' counsel's objection, Dr. Provencal testified that a divorce or parenting issue could be a "stressor" for a young person entering high school or college. Further questioning was also objected to by plaintiffs' counsel on the ground that Dr. Provencal was not testifying as an expert witness, but as a fact witness. Similar objections were made at the depositions of Richard M. Terek, M.D., Kristopher's original orthopedic surgeon, and Danny E. Humbyrd, M.D., who had been retained by Kristopher's parents to give a second opinion regarding Kristopher's femur fracture.

On September 12, 2012, plaintiffs filed four pleadings with the court: (1) objections to defendants' motion to extend the depositions of Mr. and Mrs. Plante, and to compel Kristopher's attendance at the neuropsychological examination; (2) a motion for a protective order regarding the neuropsychological examination, asking that it be limited in time and scope such that plaintiffs' counsel be allowed to be present; (3) a motion to amend the complaint to add a claim for punitive damages based on the use of alcohol; and (4) a motion to revoke Attorney Mook's pro hac vice admission on the grounds that he had not provided the dram shop assistance which

was the alleged reason for his admission; that his questioning of plaintiffs had been personally invasive and harassing; and that he had sought opinions from plaintiffs' fact witness experts.

The matters were heard by the assigned hearing justice on September 18, 2012. The hearing justice began by deferring to rule on Attorney Mook's pro hac vice status, allowing him two weeks to respond and to obtain counsel. The hearing justice then permitted defendants' neuropsychological examination of Kristopher by Dr. Hebben on the condition that no history be taken and that plaintiff be allowed to have up to two representatives at the examination, including an attorney and/or a nurse paralegal. Finally, the hearing justice summarily denied defendants' motion to compel further deposition testimony from the Plantes.[4]

At the hearing on the motion to revoke Attorney Mook's pro hac vice admission, which was conducted on October 2, 2012, plaintiffs contended that Attorney Mook questioned Drs. Provencal and Humbyrd as if they were expert witnesses when they were clearly designated as fact witnesses. In his defense, Attorney Mook asserted that his questioning was merely an attempt to test the foundation for the medical interpretations and opinions of the deponents. Attorney Mook also reiterated his position that the divorce was relevant to assessing Kristopher's mental and cognitive state in the time period that formed the basis for calculating plaintiffs' damages.

Upon conclusion of the parties' arguments, the hearing justice found that Attorney Mook had violated Rules 11 and 26(f) of the Superior Court Rules of Civil Procedure, and as a result she revoked his pro hac vice admission. She concluded that questions regarding Kristopher's sexual activity, his romantic life, the Plantes' divorce, and Mrs. Plante's sexual orientation were too personal in nature and that the questions in these areas were designed to humiliate and

---

[4] The hearing justice also granted plaintiffs' motion to amend the complaint so as to include a claim for punitive damages.

- 7 -

embarrass the deponents. Citing <u>Ondis v. Pion</u>, 497 A.2d 13 (R.I. 1985), she concluded that Attorney Mook had crossed the line with plaintiffs' treating physicians by asking them to explain the basis for their opinions and medical interpretations. In addition to revoking Attorney Mook's <u>pro hac vice</u> admission, the hearing justice ordered that Attorney Mook present a copy of her decision to opposing counsel in any case where he had already been granted <u>pro hac vice</u> admission in Rhode Island as well as in any future cases in Rhode Island where he sought appointment.

One week later, on October 9, 2012, the hearing justice heard further arguments on the conditions sought to be placed on the neuropsychological examination to be conducted by Dr. Hebben. The defendants contended that the presence of a third party in the interview portion would not be an issue, but that the presence of a third party during the testing portion of the examination would "disrupt the testing protocols."[5] Highlighting the length of Kristopher's deposition, as well as the questioning that she perceived was designed to embarrass and humiliate the witness, the hearing justice upheld the conditions already placed on the neuropsychological examination. The hearing justice found that the conditions would serve to protect plaintiff from "further humiliation, embarrassment and exhaustion."

The defendants filed their petition for a writ of certiorari on October 26, 2012, which this Court granted on June 3, 2013. Before this Court, defendants ask that each of the hearing justice's three rulings – the denial of the motion to compel further testimony from the Plantes regarding the divorce, the granting of plaintiffs' motion for a protective order regarding the neuropsychological examination, and the revocation of Attorney Mook's <u>pro hac vice</u> admission – be reversed.

---

[5] This was substantiated by an affidavit executed by Dr. Hebben on September 24, 2012.

## II

## Standard of Review

"Our review of a case on certiorari is limited to an examination of 'the record to determine if an error of law has been committed.'" State v. Poulin, 66 A.3d 419, 423 (R.I. 2013) (quoting State v. Greenberg, 951 A.2d 481, 489 (R.I. 2008)). "In addition to examining the record for judicial error, 'we inspect the record to discern if there is any legally competent evidence to support the findings of the hearing justice below.'" Id. (quoting Brown v. State, 841 A.2d 1116, 1121 (R.I. 2004)).

"When we evaluate questions of law, our review is de novo." Pierce v. Providence Retirement Board, 15 A.3d 957, 961 (R.I. 2011). "Like questions of statutory construction, the interpretation of court rules of procedure is a legal question for the court." McDonough v. McDonough, 962 A.2d 47, 54 (R.I. 2009) (citing Crowe v. Countryside Realty Associates, Co., LLC, 891 A.2d 838, 840 (R.I. 2006) (applying de novo review to interpretation of Rule 26)).

"Under Rule 11, a trial justice has discretionary authority to formulate what he or she considers to be an appropriate sanction, but must do so in accordance with the articulated purpose of the rule: 'to deter repetition of the harm, and to remedy the harm caused.' * * * As such, this Court will not reverse a trial justice's imposition of sanctions for a litigant's misconduct unless 'the trial court based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.' * * * Therefore, we will reverse an imposed sanction only if the trial justice has abused his discretion in imposing that sanction." Pleasant Management, LLC v. Carrasco, 918 A.2d 213, 217 (R.I. 2007) (quoting Michalopoulos v. C & D Restaurant, Inc., 847 A.2d 294, 300 (R.I. 2004)).

## Discussion

Professor Robert B. Kent has spent the better part of his distinguished career studying and commenting on this state's Superior Court Rules of Civil Procedure. Professor Kent recognizes that "the discovery machinery is designed to operate largely without judicial intervention. Professional cooperation on the part of counsel is essential to an effective working of the system." Robert B. Kent et al., Rhode Island Civil Procedure § 26:1, V-11 (West 2006). Quoting a former Superior Court justice, Kent declares: "The discovery provisions of the new [sic] rules require liberal interpretation if they are to serve the intended purpose. The so-called ambush theory of trial is laid to rest. Both sides are now able, if they know the rules and use them skillfully, to come to trial better prepared to meet contentions, arguments and evidence of the other side." Id. (quoting Licht, Observations on Some Aspects of the Discovery Provision of the New Rules, 1966 Rhode Island Bar Annual 1, 7). "The scope of discovery is exceedingly broad," and its principal limitations are that the information sought must be relevant to the pending matter and not privileged. Id., § 26:3 at V-12.

Professor Kent's teachings on depositions are especially helpful to this Court. He instructs that, in the event of an objection to "the competency of a witness or the competency, relevancy, or materiality of testimony," opposing counsel should not advise the deponent not to answer the question. Robert B. Kent et al., § 30:8 at V-47. Instead, "[w]hatever the objection may be, Rule 30(d)(1) [of the Superior Court Rules of Civil Procedure] requires counsel to make it in a nonargumentative and nonsuggestive way." Robert B. Kent et al., § 30:8 at V-47. Professor Kent opines, "[i]f the objection cannot be cured, the record should reflect that fact as

well as the ground on which it is based.  The witness should answer and the deposition should continue."  Id.

Professor Kent acknowledges that there are still very limited circumstances in which it is appropriate for counsel to instruct a deponent not to answer a question.  He notes that this rule "is designed to protect both the witness and the adverse party from bad faith or unprofessional conduct of the deposition by examining counsel."  Robert B. Kent et al., § 30:8 at V-48.  He laments, however, that "[a]ll too often some counsel have instructed the deponent not to answer the posed question for a variety of insubstantial reasons, such as to thwart the discovery of unfavorable facts or to distract the examining attorney from a particular line of questions."  Id.

In Kelvey v. Coughlin, 625 A.2d 775 (R.I. 1993), we addressed the problem that arises when counsel instructs a deponent not to answer certain questions that have been put to him. There, we assessed the merits of the appeal under an abuse of discretion standard and found that the hearing justice was within her discretion when she ordered the defendant to resubmit to deposition.  Id. at 776.  Examining Rules 26(b)(1) and 30(c), we held that "[t]he only instance, we repeat, the only instance in which an attorney is justified in instructing a deponent not to answer is when the question calls for information that is privileged."  Kelvey, 625 A.2d at 776. When an attorney instructs a deponent not to answer certain questions, that attorney becomes an arbiter, a situation we have consistently sought to avoid.  See id.  ("It is not the prerogative of counsel, but of the court to rule on objections." quoting Shapiro v. Freeman, 38 F.R.D. 308, 311 (S.D.N.Y. 1965)).

**A**

**Motion to Compel Additional Testimony from the Plantes**

The defendants contend that the hearing justice abused her discretion when she denied their motion to compel additional testimony of the Plantes regarding their separation and divorce. They argue that plaintiffs' counsel violated the holding in Kelvey when he instructed the Plantes not to answer certain questions about their divorce and its effect on Kristopher. The defendants claim that the information they were seeking was relevant because the divorce could have had an impact on Kristopher's cognitive condition. In response, plaintiffs contend that questions about the divorce could not have been calculated to lead to the discovery of admissible evidence, but were instead meant to embarrass, confuse, and humiliate the Plantes.

The questions plaintiffs' counsel instructed the Plantes not to answer centered on the reason for the divorce, Mrs. Plante's current living arrangement and romantic life, and, significantly, the Plantes' communications with Kristopher on those issues. As defendants point out, none of this is privileged information. Although plaintiffs' counsel did not comply with our holding in Kelvey, we nevertheless conclude that the hearing justice did not err in denying defendants' motion to reopen discovery. The few questions that plaintiffs' counsel instructed the Plantes not to answer came toward the end of depositions cumulatively totaling nearly four hours and 200 transcript pages. Although not explicitly stated, the hearing justice's reasoning for denying the motion to compel can be gleaned from the September 18, 2012 hearing, when she expressed her concern about the intrusive nature of this questioning and its potential to chill plaintiffs' resolve.

Although we do not retreat from our holding in Kelvey, we are not convinced that the hearing justice erred in her denial of the motion to compel, especially in light of the length of

both depositions, and the point at which they concluded. We find the grounds for the hearing justice's denial of the motion to compel to be reasonable given the extent of the deposition, and we affirm that portion of the ruling.

**B**

**Limits on the Neuropsychological Examination**

The defendants next contend that the protective order prohibiting their neuropsychologist from taking a history from plaintiff and allowing plaintiff up to two representatives in the examination room during testing impeded their expert from performing a meaningful examination. The plaintiffs assert that Dr. Hebben does not need to take a history from Kristopher because one could be gleaned from his deposition and treating physicians' reports. The plaintiffs also claim that there is no substantial proof that representatives at the examination would affect testing. We will address these issues in turn.

**1**

**History Taking**

We have not previously determined whether a hearing justice is within his or her discretion to preclude a history taking during a court-ordered examination. Rule 35(a) of the Superior Court Rules of Civil Procedure provides that the hearing justice has control over "the time, place, manner, conditions, and scope of the [mental or physical] examination and the person or persons by whom it is to be made." We gain guidance from treatises that have shed light on the issue of history taking. "The doctor must be permitted to take the party's history and to ask such other questions that will enable him or her to formulate an intelligent opinion

concerning the nature and extent of the party's injuries." 8B Charles Alan Wright et al., Federal Practice & Procedure § 2236 at 297 (2010).[6]

In our opinion, without the ability to take a history, Dr. Hebben would be unable to delve into areas tailored to her own examination; inquire into Kristopher's current neuropsychological status; and, perhaps most importantly, ask pointed follow-up questions that might assist her in reaching an informed medical conclusion. Additionally, without a history, her examination will not mirror the examination of plaintiffs' expert, where a history was taken. See Henderson v. Newport County Regional Young Men's Christian Association, 966 A.2d 1242, 1246 (R.I. 2009) (noting that this state's liberal discovery rules "generally favor[] the reciprocal disclosure of relevant information").

While we acknowledge the length of time that Kristopher has already been questioned, we also recognize that the examination is a significant event in this litigation, and, in our opinion, it was error to so severely limit one party from having access to material information. On balance, we are satisfied that, barring extreme circumstances that we do not see here, the

_____

[6] Various federal courts have also addressed this issue and come to the conclusion that, with respect to medical examinations, there is no substitute for a history taking. See Romano v. II Morrow, Inc., 173 F.R.D. 271, 273 (D. Or. 1997) ("The questioning of the plaintiffs by defense counsel during the taking of their depositions, the historical medical records, and the answers of the plaintiffs to interrogatories are no substitute for the answers to questions that a physician must pose to a patient during a physical examination. All of the questions that a medical doctor needs to ask, in particular follow-up questions, cannot be determined in advance of the medical examination."); see also Ragge v. MCA/Universal Studios, 165 F.R.D. 605, 609 (C.D. Cal. 1995) ("Because the mental examination provides one of the few opportunities for a defendant to have access to a plaintiff, and the only opportunity for a defendant to have a plaintiff examined by [the] defendant's expert, some preference should be given to allowing the examiner to exercise discretion in the manner and means by which the examination is conducted, provided it is not an improper examination."). Although federal district court decisions are not binding on this Court, they may guide us in the interpretation of our own rules. See Crowe v. Countryside Realty Associates, Co., LLC, 891 A.2d 838, 840 (R.I. 2006) ("[W]here the federal rule and our state rule of procedure are substantially similar, we will look to the federal courts for guidance or interpretation of our own rule.").

better practice is to allow a history to be taken by defendants' expert. The limitation on the taking of a history would be an impediment to the formulation of knowledgeable medical opinions and conclusions. We thus quash that portion of the hearing justice's protective order precluding Dr. Hebben from taking a history at her examination of Kristopher.

## 2

### Presence of Representatives

Again, we have not previously addressed the issue of whether an examinee should be permitted to have representatives, including an attorney, in the room during the testing phase of a Rule 35 examination.[7] The defendants have submitted numerous scientific and medical studies that decry the presence of any third parties, especially attorneys, in the room during the entirety of a psychological examination. They have also provided an affidavit from Dr. Hebben in which she avers that the presence of third parties would violate standard procedure and render her "unable to conduct a fair and accurate neuropsychological examination of [Kristopher]." The plaintiffs, on the other hand, contend that there is no objective harm caused by third-party observers and that the hearing justice was well within her discretion to allow for the presence of third-party observers at the testing phase of the examination.

As Wright and Miller recognize, a Rule 35 examination is "an important, perhaps crucial, event in the development of the case." 8B Charles Alan Wright et al., § 2236 at 291. Despite the examination being taken by one party's expert, the examiner is supposed to act independently and objectively, rather than favoring the party who has hired him or her. Id. at 292. Courts have responded to this issue in a variety of ways, based on the particular circumstances of each case. Id. at 294. Wright and Miller acknowledge the concern many courts share that the examination

---

[7] We note that defendants do not contest the presence of third parties during the interview or history taking phase of the examination. See p.8, supra.

- 15 -

is meant to be scientific rather than adversarial and that the presence of an attorney or other representative of the examinee has the potential to "disrupt, or defeat the purpose of, the examination." Id. at 292. The norm in federal courts is to bar counsel unless good cause is shown. Id. at 298.[8]

We certainly agree that Kristopher was subjected to a searching and exhaustive deposition in which he was asked to answer invasive questions of a personal nature, to the extent that some type of protection might arguably have been reasonable. We also recognize, however, that the presence of plaintiffs' counsel during the testing phase of the examination has the potential to generate an adversarial environment and prejudice the results. We agree with those federal authorities who assert that this condition is reserved for rare occasions where good cause is shown, and we are not persuaded that this is that case. Further, plaintiffs' neuropsychologist was not encumbered by this condition, and the creation of an uneven playing field violates this state's broad and balanced discovery rules. See Henderson, 966 A.2d at 1246. As a result, we conclude that the order allowing plaintiffs' attorney to be present during the testing phase of the examination was improper, and we quash that portion of the ruling.

Because, however, persuasive authority is mainly concerned with attorney presence except in rare situations, we see no abuse in the hearing justice allowing a third-party

_____

[8] See Holland v. United States, 182 F.R.D. 493, 495 (D.S.C. 1998) ("The weight of federal authority * * * favors the exclusion of the plaintiff's attorney from a Rule 35 examination absent a compelling reason."). The presence of third parties in the testing phase of the examination has been considered a "distraction," turning what should be an objective inquiry into "an adversarial, partisan atmosphere." Shirsat v. Mutual Pharmaceutical Co., 169 F.R.D. 68, 70, 71 (E.D. Pa. 1996). In addition, federal courts have expressed concern that the presence of an attorney during the testing phase of a psychological examination could lead to a scenario where that attorney becomes a witness in the case. See Hertenstein v. Kimberly Home Health Care, Inc., 189 F.R.D. 620, 629 (D. Kan. 1999) ("[T]he presence of a lawyer creates a potential ethical problem since he becomes a possible witness and might therefore have to withdraw as trial counsel."). Again, although federal district court decisions are not binding on this Court, they may guide us in interpreting our own rules. See n.5, supra.

representative, such as a nurse paralegal, to be present and provide protection. We thus modify the protective order to reflect this conclusion.

## C

## Revocation of Attorney Mook's <u>Pro</u> <u>Hac</u> <u>Vice</u> Admission

Finally, defendants ask that we overturn the hearing justice's revocation of Attorney Mook's <u>pro</u> <u>hac</u> <u>vice</u> admission. The defendants point out that Attorney Mook's questioning of the Plantes during their depositions adhered to the directives espoused in <u>Kelvey</u> and that his questioning of plaintiffs' physician fact witnesses was merely an attempt to elicit straightforward medical treatment and prognosis testimony. The defendants rightfully express their concern that this order will always be a "scarlet letter"[9] for Attorney Mook, in that it will impede his ability to successfully apply for future <u>pro</u> <u>hac</u> <u>vice</u> admission, at least in Rhode Island, or may affect his malpractice insurance coverage. In response, plaintiffs contend that defense counsel's behavior was outrageous and thus constituted sufficient evidence for the hearing justice to have imposed this severe punishment. In addition, plaintiffs argue that Attorney Mook's involvement in the case for his purported dram shop expertise is no longer necessary because he has yet to actually conduct any dram shop-related discovery.[10]

General Laws 1956 § 11-27-5 provides: "No person, except a duly admitted member of the bar of this state, whose authority as a member to practice law is in full force and effect, shall practice law in this state." We have previously recognized, however, that "circumstances might arise when a particular client might on 'special and infrequent occasion and for good cause

---

[9] <u>The Scarlet Letter</u> is an 1850 work of fiction written by Nathaniel Hawthorne, telling the story of a young woman forced to wear a scarlet "A" as a symbol of shame.

[10] It should be noted that defendants' <u>pro</u> <u>hac</u> <u>vice</u> petition in the present case was based not only on Attorney Mook's specialized knowledge with respect to dram shop cases, but also on his long-standing relationship with defendants' insurer.

shown' require the assistance of an out-of-state attorney in a particular court proceeding in this state * * *." In re Ferrey, 774 A.2d 62, 63-64 (R.I. 2001). This holding has been adopted in Article II, Rule 9 of the Supreme Court Rules, Admission of Attorneys and Others to Practice Law, which concerns an out-of-state attorney's admission to practice law in Rhode Island. See In re Ferrey, 774 A.2d at 64.

Rule 9 provides, in pertinent part:

"(a) * * * Any attorney who is a member of good standing of the bar of any other state * * * may, upon special and infrequent occasion * * * be permitted in the discretion of this Court * * * to participate to such an extent as the court may prescribe in the presentation of a cause or appeal in this or any court * * * provided, however, that * * * a member of the bar of this state * * * shall assume full responsibility for them and for the conduct of the cause and of the attorney to whom such privilege is accorded * * *.

" * * * Unless the Supreme Court [or] the court granting pro hac vice admission * * * permits otherwise, any attorney who is granted such leave * * * shall not engage in any proceeding * * * unless there is present * * * a member of the bar of Rhode Island who shall be prepared to continue with the proceeding * * * in the absence of counsel who has been so granted leave.

"Good cause for according such privilege shall be limited to facts or circumstances * * * includ[ing] * * * a showing that the cause involves a complex field of law in which the nonresident attorney is a specialist [or] a long-standing attorney-client relationship * * *."

Rule 11 provides that "a trial justice has discretionary authority to formulate what he or she considers to be an appropriate sanction, but must do so in accordance with the articulated purpose of the rule: 'to deter repetition of the harm, and to remedy the harm caused.'" Pleasant Management, LLC, 918 A.2d at 217 (quoting Michalopoulos, 847 A.2d at 300). Barring an erroneous understanding of the law or a clearly erroneous evaluation of the evidence, we "will not reverse a trial justice's imposition of sanctions for a litigant's misconduct." Id. "[W]e will reverse an imposed sanction only if the trial justice has abused his [or her] discretion in imposing that sanction." Id.

The hearing justice explained that her decision to revoke Attorney Mook's pro hac vice admission was based on his behavior at the depositions of both the Plantes and the physicians who had been designated as fact witnesses. She believed that the questioning of the Plantes was an attempt to embarrass, humiliate, and chill their resolve, in violation of Rules 11 and 26(f). Although Attorney Mook attempted to explain the relevance of his questioning, the hearing justice characterized his style as a "fishing expedition," and concluded that his actions rose "to the level of outrageous and egregious conduct."

Although we acknowledge that Attorney Mook's questioning of the Plantes was somewhat unorthodox, sometimes tedious, and arguably offensive, we do not agree that the severity of this punishment was appropriate in light of the fact that plaintiffs' counsel was not blameless in allowing the litigation to reach this point. Although the questions were of a personal nature, plaintiffs' counsel cited to no privilege, as required by the strong and unequivocal language in Kelvey, when instructing deponents not to answer. See Kelvey, 625 A.2d at 776. Pursuant to Rule 30(d)(3), counsel's remedy was to cease the deposition and bring the matter to the immediate attention of a Superior Court justice. See Kelvey, 625 A.2d at 777 ("The harm caused by being required to take additional depositions of a witness who fails to answer a question based on an improperly asserted objection far exceeds the mere inconvenience of a witness having to answer a question which may not be admissible at the trial of the action." quoting W. R. Grace & Co. v. Pullman Inc., 74 F.R.D. 80, 84 (W.D. Okla. 1977)).

The hearing justice also found that Attorney Mook's questioning at the depositions of Drs. Humbyrd and Provencal "crossed the line" to the point of warranting the imposition of sanctions. Citing Ondis as well as L'Etoile v. Director of Public Works of Rhode Island, 89 R.I. 394, 153 A.2d 173 (1959), and Sousa v. Chaset, 519 A.2d 1132 (R.I. 1987), the hearing justice

noted that counsel for one party may not compel a nonparty witness to give an expert opinion when that witness has not been engaged as an expert. The hearing justice did not misstate our holding that "an expert witness who ha[s] not been engaged but merely subpoenaed [cannot] be compelled to give opinion testimony against his will." Ondis, 497 A.2d at 18. Nevertheless, especially in light of the fact that no guidance was sought from a Superior Court justice, we are troubled by the severity of this punishment.

As we have noted, plaintiffs' counsel was not free of culpability in allowing the depositions of the physician fact witnesses to spiral out of control. Clearly bothered by Attorney Mook's allegedly impermissible questioning, plaintiffs' counsel lodged myriad objections and, at the deposition of Dr. Humbyrd, repeatedly informed the deponent that he was not required to answer defense counsel's questions. While not as clear a violation of Kelvey, this tactic was comparable to the actions taken by plaintiffs' counsel at the Plantes' depositions, and it similarly violated the spirit of Kelvey that prevents counsel from acting as the judge. See Kelvey, 625 A.2d at 776 ("It is not the prerogative of counsel, but of the court to rule on objections." quoting Shapiro, 38 F.R.D. at 311).

Additionally, it is essential to bear in mind that plaintiffs alleged that Kristopher suffered cognitive difficulties and "severe and permanent injuries to his mind and body" as a result of the March 2008 accident. In view of that allegation, it is understandable that defense counsel made an effort to delve into what circumstances, other than the accident, might have caused Kristopher to suffer these difficulties.

It may be fairly said that the impropriety of Attorney Mook's questioning of the fact witnesses was debatable. He asked the fact witnesses to elaborate on the grounds for their diagnoses, treatment, and prognoses, and for the basis of their findings. These were not

- 20 -

hypothetical questions asked in an effort to extract expert opinions. Rather, Attorney Mook arguably was seeking to elaborate on the reports that were in his possession. While Attorney Mook's questions may have treaded into inadmissible inquiry, they could have been resolved at the time of trial and without his removal from the case. See State v. Silvia, 898 A.2d 707, 716 (R.I. 2006) ("The determination of whether evidence is relevant is confided to the sound discretion of the trial justice * * *."). Given that there was no clear violation of Ondis, there were no grounds for such a severe sanction in this case.

Moreover, although they were clearly aware of the proper remedy pursuant to Rule 30(d)(3), plaintiffs' counsel chose not to exercise it. At the deposition of Dr. Provencal, plaintiffs' counsel declared, "I'm going to, if you persist in this line of questioning, get a [S]uperior [C]ourt judge on the phone to deal with this issue * * *." A similar exchange transpired at Dr. Humbyrd's deposition, where plaintiffs' counsel asked defense counsel: "Do you want to adjourn the deposition right now and walk across the street to [S]uperior [C]ourt?" We cannot agree that Attorney Mook deserved this sanction when counsel for both sides were partially to blame for allowing the situation to become problematic. As a result, we conclude that the revocation of Attorney Mook's pro hac vice admission for his conduct at the fact witness depositions was an abuse of discretion.

We take this opportunity to note that "sanctions are a badge of reprobation that can haunt an attorney throughout his or her career * * * [And that the] ramifications * * * go far beyond the particular case." In re Plaza-Martinez, 747 F.3d 10, 14 (1st Cir. 2014). Thus, trial courts "must take care in balancing these competing concerns" with the facts in the record, and when those facts do not support the stated grounds for punishment, the sanction should be vacated. Id. In the present case, it is our opinion that the facts in the record do not support the hearing justice's

grounds for revoking Attorney Mook's pro hac vice admission. Because this sanction was not "to deter repetition of the harm [or] to remedy the harm caused," we conclude that it was an abuse of discretion for the hearing justice to have imposed it. Pleasant Management, LLC, 918 A.2d at 217 (quoting Michalopoulos, 847 A.2d at 300).

## IV

## Conclusion

For the foregoing reasons, we deny the petition for certiorari in part and grant it in part. We affirm the hearing justice's ruling denying the defendants' motion to compel additional testimony from Mr. and Mrs. Plante and therefore quash the writ of certiorari with respect to this issue. We grant certiorari on the issue of the history-taking and quash that portion of the ruling barring a history from being obtained at Kristopher's examination. We affirm in part, however, the hearing justice's ruling granting the plaintiffs' motion for a protective order, allowing one non-attorney representative to join Kristopher for the testing phase of the examination, and we quash the writ of certiorari on this issue. Finally, we grant certiorari on the pro hac vice issue and quash that portion of the ruling revoking Attorney Mook's pro hac vice admission. We remand this case to the Superior Court with our decision endorsed thereon.

**Justice Robinson, concurring.** I concur in the judgment of the majority as to each of the discovery-related issues addressed in the opinion of the Court. With respect to the revocation of Attorney Mook's pro hac vice status, however, I feel obliged to state that I perceive no sanctionable conduct (let alone conduct warranting the revocation of pro hac vice status) in the depositions of Kristopher Plante and his parents. The complaint in this personal injury action, in which there was the potential for substantial damages, specifically alleged that Kristopher Plante

- 22 -

had suffered "severe and permanent injuries to his mind and body" (an allegation that is further described in the opinion of the Court). In view of that allegation, it is my opinion that defense counsel was professionally obliged to conduct discovery as to what other "stressors" might have had a causal effect on Kristopher Plante's post-accident cognitive state. In carrying out that task by taking the deposition of Kristopher and his parents, I can discern no abusive questioning by Attorney Mook. One or other questions may have wandered into irrelevancy, but that is not uncommon in the deposition process—and I believe that the "no harm no foul" rule would be applicable thereto. I need not go on at length setting forth my views in this regard; suffice it to say that I am convinced that I would be abdicating my responsibility if I did not at least indicate in summary terms this basis for my belief that the pro hac vice status of Attorney Mook should not have been revoked by the trial justice.

**Chief Justice Suttell, concurring in part and dissenting in part.** I concur with the opinion of the majority affirming the hearing justice's denial of the defendants' motion to compel additional testimony of the Plantes. I also agree that the hearing justice erred in precluding Dr. Hebben from taking a history from Kristopher and in allowing the plaintiffs' counsel to be present during the neuropsychological examination, but that the protective order should be modified to allow a third-party representative of the plaintiffs to be present. I depart from the majority, however, with respect to its holding that the hearing justice improperly revoked Attorney Mook's pro hac vice status. Although I acknowledge this to be a very close question, after reviewing the record, I cannot conclude that the hearing justice abused her discretion in so doing.

Article II, Rule 9(a) of the Supreme Court Rules, Admission of Attorneys and Others to Practice Law, permits admission of out-of-state attorneys to appear in our courts, "upon special and infrequent occasion and for good cause shown * * * in the discretion of this Court * * *." As the hearing justice correctly observed, however, once granted, pro hac vice status is not a constitutionally protected property interest; rather, it is a privilege that may be revoked in the discretion of the court. Nevertheless, in light of a client's interest in being represented by an attorney of his or her own choice and the realities of today's practice, in which jurisdictional boundaries seemingly have less and less significance, pro hac vice status ought not to be revoked lightly.

In this case, the hearing justice held two hearings on plaintiffs' motion to revoke with a two-week interval to afford Attorney Mook "a greater opportunity to respond and to engage counsel" if he so chose. At the conclusion of the hearings, she made specific findings that Attorney Mook's actions were "improper and abusive" and that he had violated Rules 11 and 26(f) of the Superior Court Rules of Civil Procedure. The majority states that it is "troubled by the severity of th[e] punishment." I am too, but I believe that the majority fails to give proper deference to the factual findings of the hearing justice.

The hearing justice determined that many of the questions posed to Kristopher during his nearly five-hour deposition were not calculated to lead to the discovery of admissible, or even relevant, evidence. She concluded that "Mr. Mook sought to embarrass him and humiliate him." She highlighted questions concerning Kristopher's religious affiliation, his road bike, his sexual activity during high school, and even the corsage he bought for his prom date. The hearing justice also considered Attorney Mook's questioning of Kristopher's parents concerning the circumstances surrounding their divorce and his mother's sexual orientation, noting that

- 24 -

Kristopher's "voluminous" treatment records were "devoid of anything connecting [Kristopher's] alleged injury damages to his parents' divorce." The hearing justice found no legitimate basis for exploring these "highly personal and sensitive issues." On the contrary, she found that such questions were intended "to embarrass, humiliate, and harass the Plantes and to discourage them from pursuing the claim." Significantly, the hearing justice rejected Attorney Mook's proffered reasons for asking many of the questions, characterizing his explanation as disingenuous.

With respect to the depositions of Dr. Humbyrd and Dr. Provencal, they were both clearly deposed as fact witnesses rather than as expert witnesses. Both parties acknowledged as much in an exchange of correspondence shortly before the depositions took place. Rhode Island law is well-settled that a nonparty witness may not be compelled to render an expert opinion in a case where he or she has not been engaged as an expert. See Sousa v. Chaset, 519 A.2d 1132, 1136 (R.I. 1987); Ondis v. Pion, 497 A.2d 13, 18 (R.I. 1985); L'Etoile v. Director of Public Works of the State of Rhode Island, 89 R.I. 394, 404-05, 153 A.2d 173, 179 (1959).

On August 29, 2012, Attorney Mook deposed Dr. Humbyrd, Kristopher's treating orthopedic surgeon. At the outset of the deposition, Dr. Humbyrd was asked whether he had been asked by any party to be an expert witness, to which he replied "no." A review of the deposition transcript reveals that plaintiffs' counsel interjected objections to questions designed to elicit expert testimony from Dr. Humbyrd no less than eleven times. All of which questions he answered. After the twelfth objection, Dr. Humbyrd simply refused, stating, "Counselor, I will not respond to that question. * * * It's beyond the scope of my -- the requisition was for me to testify regarding my treatment of Mr. Plante, which I have done. I will not comment in general orthopedic terms regarding anything beyond the scope of that." Nevertheless, Attorney

Mook persisted until Dr. Humbyrd indicated that he would want his own counsel present if he were to render an opinion.

The hearing justice found that:

> "Mr. Mook willfully violated the well-established law in attempting to require Dr. Humbyrd to testify as an expert[,] * * * that [he] knowingly deceived [p]laintiff's counsel by stating in writing before the deposition that he was going to treat Dr. Humbyrd as a fact witness when in fact * * * he intentionally engaged in a line of questioning reserved for [an] expert witness[,] * * * [and] that Mr. Mook failed to show Dr. Humbyrd adequate respect by ignoring his statement that he would want to have counsel present if asked expert questions."

On balance, I cannot conclude that the hearing justice's ruling in this regard was based on an erroneous assessment of the evidence.

Similarly, during the deposition of Dr. Provencal, plaintiffs' counsel placed numerous objections on the record, many of which were predicated on the doctor's appearance as a fact witness. At one point, plaintiffs' counsel interjected, "I'm going to, if you persist in this line of questioning, get a [S]uperior [C]ourt judge on the phone to deal with this issue * * *." Doctor Provencal answered all of the questions, however, and the deposition appears to have proceeded in relative tranquility. Nevertheless, as the hearing justice correctly observed, Attorney Mook "ignored" the many objections to his questions that clearly seemed to have been posed for no other purpose than to elicit opinion testimony.

Based upon my review of the record, I do not believe that the hearing justice abused her discretion in revoking Attorney Mook's pro hac vice admission. Moreover, I disagree with the majority's assessment that the conduct of plaintiffs' counsel at the depositions of the two doctors somehow ameliorated Attorney Mook's impermissible questioning. As my aunt was fond of instructing, "two wrongs do not make a right." The behavior of plaintiffs' counsel has little, if

any, bearing on the repeatedly improper questioning of a fact witness by Attorney Mook. The mere assertion of objections is perfectly appropriate under <u>Kelvey v. Coughlin</u>, 625 A.2d 775 (R.I. 1993). Moreover, plaintiffs' counsel did not inform Dr. Humbyrd that he was "not required to answer that question" until after he had already lodged twelve objections and after Dr. Humbyrd had already refused to answer a question. With respect to Dr. Provencal's deposition, although plaintiffs' counsel made a bevy of objections and indicated that she would call a judge if Attorney Mook continued to ask inappropriate questions, she never instructed the witness not to answer a question.

I am fully in accord with the majority's adherence to the holding in <u>Kelvey</u>, 625 A.2d at 776. An attorney may instruct a witness not to answer a question only when the question calls for information that is privileged. <u>Id.</u> Rule 30(d)(3) of the Superior Court Rules of Civil Procedure, however, permits a party or deponent to demand a suspension of the deposition to make a motion or obtain a ruling by telephone "upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party * * *."

That is not to say, however, that an attorney may conduct a deposition with impunity in the absence of the opposing party seeking such relief. Good faith is expected in all proceedings by members of the bar, whether active members of the bar or those admitted <u>pro</u> <u>hac</u> <u>vice</u>. Here, the hearing justice found that Attorney Mook persisted in asking plaintiffs questions that were not designed to elicit admissible evidence, but rather to embarrass, humiliate, and harass them, and to discourage them from pursuing the litigation. She also found that he intentionally, and over objection, asked questions of fact witnesses that were specifically designed to elicit inadmissible opinion testimony.

I am satisfied that the hearing justice's decision to sanction Attorney Mook by revoking his pro hac vice admission, although perhaps harsh, is supported by the record. I would therefore affirm the hearing justice's ruling in that regard. I would vacate, however, that portion of her ruling ordering him to provide a copy of the order and transcript of the decision "to any other Superior Court Justice within this state to whom he has applied, or will apply in the future, for pro hac vice status." The revocation of his pro hac vice status is a matter of weighty significance for both Attorney Mook and the bar, and thus one that need not bear any scarlet embellishment.

**Justice Goldberg, concurring in part and dissenting in part.** As an initial matter, I note that the fact that four justices have found it appropriate to write on the issue of the revocation of the pro hac vice admission—which is guided by an abuse-of-discretion standard—speaks loudly. This is a decision that is committed to the trial justice. Because I am of the opinion that the trial justice did not abuse her discretion when she revoked Attorney Mook's pro hac vice status, I respectfully dissent from that portion of the majority decision. The grant of pro hac vice admission in this state is a privilege which is "permitted in the discretion of this Court[.]" Article II, Rule 9(a) of the Supreme Court Rules, Admission of Attorneys and Others to Practice Law. When an out-of-state attorney is accorded such a privilege, it is incumbent upon that attorney to comport himself or herself in accordance with the laws of this state and the rules of the Rhode Island Judiciary. See Cooper v. Hutchinson, 184 F.2d 119, 123 (3rd Cir. 1950) (stating that the rights and duties of pro hac vice counsel, once admitted, are identical to those of a barred attorney). When an attorney fails to comply, as is the case here, it is within the inherent power of the court to remedy the situation. See Standing Committee on Discipline of the United States District Court for the Southern District of California v. Ross, 735 F.2d 1168,

1170 (9th Cir. 1984) ("Any court which has the power to admit attorneys to practice may also sanction them for unprofessional conduct."); see also Baldwin Hardware Corp. v. FrankSu Enterprise Corp., 78 F.3d 550, 562 (Fed. Cir. 1996) (concluding that power to sanction "encompasses the authority to suspend an attorney admitted pro hac vice from further practice before the court," citing United States v. Engstrom, 16 F.3d 1006, 1012 (9th Cir. 1994)); Royal Indemnity Co. v. J.C. Penney Co., 501 N.E.2d 617, 620 (Ohio 1986) ("[O]nce pro hac vice status is extended, a trial court retains the power to revoke the status."). A decision to revoke the pro hac vice status of an attorney is committed to the sound discretion of the trial justice. See Fremming v. Tansey, 626 A.2d 219, 220 (R.I. 1993) (review of trial justice's decision to impose sanction is guided by abuse-of-discretion standard).

Attorney Mook was admitted pro hac vice in this case for two purported reasons: (1) his expertise regarding dram shop claims[1] and (2) his prior relationship with "the client"—not defendant Daniel Stack, but rather his insurance company. As a prerequisite to admission pro hac vice, Attorney Mook was required to be sponsored by a licensed attorney who maintains an office in Rhode Island; whether the local counsel met the requirement that he maintain an office in this state is questionable, at best. Nonetheless, this formality was not the basis for the revocation of Attorney Mook's pro hac vice admission.[2]

---

[1] As the trial justice alluded, any dram shop claim on behalf of the insurance company is dubious, at best, given that it was Attorney Mook's client who was the drunk driver in this case, and his insurance company is seeking indemnity from the barroom where he got drunk. See G.L. 1956 chapter 14 of title 3.

[2] This Court previously found that noncompliance with this prerequisite was not fatal to a pro hac vice admission and granted a ten-day window in order for pro hac vice counsel to obtain a proper sponsoring attorney. See In re Gauvin, 779 A.2d 645, 645-46 (R.I. 2001) (mem.).

The trial justice's basis for revoking the pro hac vice admission of Attorney Mook was twofold.[3]  First, she determined that Attorney Mook's examination of Kristopher, Teresa, and Timothy was "well beyond the letter and spirit of Rule 26 [of the Superior Court Rules of Civil Procedure] * * * [and that Attorney Mook] sought to embarrass [them] and humiliate [them]." The trial justice determined that Attorney Mook's questions about highly personal and sensitive issues were not geared to lead to the discovery of admissible evidence, but rather, were geared "to discourage [plaintiffs] from pursuing the claim."[4]  The trial justice concluded that "[n]o

---

[3] While not a basis for the trial justice's revocation or a reason for my dissent, it should be noted that Attorney Mook misstated when he first learned of the divorce between Teresa and Timothy. In his pleadings and at the hearings before the trial justice, Attorney Mook insisted that the first time he learned of the divorce was at the deposition of Teresa and Timothy.  However, it was actually Kristopher who first informed Attorney Mook of the divorce, and Attorney Mook in fact questioned Kristopher about the divorce, three weeks before the depositions of Teresa and Timothy.

[4] A sample—but certainly not a complete list—of such questions by Attorney Mook include:

1. "Q [posed to Kristopher]: All right. I don't want to embarrass you, but I want to ask you, were you sexually active with [your girlfriend] during high school?"
2. "Q [posed to Kristopher]: Okay. And after the accident when you were at URI you would see [your girlfriend]. Were you still sexually active with her?"
3. "Q [posed to Kristopher]: Must be a very fun situation, huh?" after eliciting that Kristopher was living with his ex-girlfriend.
4. "Q [posed to Teresa]: Did [Kristopher] ever discuss with you his sexual activity with his girlfriends during high school before the accident?"
5. "Q [posed to Teresa]: Okay.  Can you just * * * tell me in a succinct way what the reason was why you decided to divorce?"
6. "Q [posed to Timothy]: Did [Kristopher] ever share with you or did you ever discuss with him his sexual activity, if any, with [his girlfriend]?"
7. "Q [posed to Timothy]: You had not discussed [the divorce] with your wife before she asked you for a divorce the first time around the fall of '09, correct?"
8. "Q [posed to Timothy]: Again, I'm going to ask you for the record again what were the reasons for the divorce that your wife gave to you when she asked you for the divorce?"
9. "Q [posed to Timothy]: Okay. As far as you know since '09 has you[r] wife been dating or had any relationships since '09 when she asked for the divorce?"
10. "Q [posed to Timothy]: Do you know her relationship with Farzana?"
11. "Q [posed to Timothy]: Do you know if Farzana is your - - is Ter[esa's] lover?"

reasonable attorney would have determined this line of questioning to be calculated to the discovery of admissible evidence." Although I agree with this finding, I am of the opinion that standing alone, this behavior, although deplorable, may not have risen to such a level of impropriety as to warrant revocation.

It is the trial justice's second basis for revocation of Attorney Mook's pro hac vice admission, his conduct during the deposition of the treating physicians that convinces me that the trial justice acted appropriately. The trial justice relied on well-established precedent in Ondis v. Pion, 497 A.2d 13 (R.I. 1985) and Sousa v. Chaset, 519 A.2d 1132 (R.I. 1987), that a fact witness can never be compelled to provide an expert opinion. The trial justice noted the multiple objections from not only plaintiffs' counsel, but from Dr. Humbyrd himself to questions that called for Dr. Humbyrd to give an expert opinion. Ultimately, the trial justice found

> "that [Attorney] Mook wilfully [sic] violated the well-established law in attempting to require Dr. Humbyrd to testify as an expert. * * * The [c]ourt concludes that [Attorney] Mook knowingly deceived [p]laintiff's [sic] counsel by stating in writing before the deposition that he was going to treat Dr. Humbyrd as a fact witness when in fact at some point * * * he intentionally engaged in a line of questioning reserved for [an] expert witness."

After conducting a thorough review of the record, the trial justice stated that she found "sufficient basis on this record to determine that [Attorney Mook's] conduct r[ose] way above zealous advocacy, reaching the level of egregiousness envisioned by Rule 11 [of the Superior Court Rules of Civil Procedure]."

---

12. "Q [posed to Timothy]: Are you aware if Kris has knowledge of whether or not Farzana is Ter[esa's] lover?"
13. "Q [posed to Timothy]: Have you ever discussed with Kris his knowledge of whether or not he knows if Farzana is Ter[esa] Plante's lover or not?"
14. "Q [posed to Timothy]: Have you discussed with Kris his feelings about his mother's relationship, whatever it is, with Farzana?"

- 31 -

In my opinion, the conduct exhibited by Attorney Mook was censurable and beyond the bounds of acceptable behavior. Attorney Mook knowingly and willfully violated established law in this state and exhibited a complete disregard of the well-established rule that a fact witness may not be compelled to offer an expert opinion against his or her will. See Sousa, 519 A.2d at 1136 ("An expert who has not been engaged, but only subpoenaed, cannot be compelled to give opinion testimony against his or her will."). Attorney Mook knew full well that Dr. Humbyrd was noticed as a fact witness only—a situation that was acknowledged in correspondence between Attorney Mook and counsel for plaintiffs[5]—yet he proceeded to pose a litany of questions that would require Dr. Humbyrd to give an expert opinion. In the face of numerous questions that called for an expert opinion, objections were raised by plaintiffs' counsel as well as Dr. Humbyrd. At one point, Dr. Humbyrd stated that he would not answer a question and, when challenged by Attorney Mook as to the basis for not answering, Dr. Humbyrd replied: "[i]t's beyond the scope of my—the requisition was for me to testify regarding my treatment of Mr. Plante, which I have done. I will not comment in general orthopedic terms regarding anything beyond the scope of that." After Dr. Humbyrd's assertion—that he did not want to provide "further conjecture as to any future issues regarding this patient"—Attorney Mook pressed on, again asking essentially the same question. At that point, Dr. Humbyrd made an unequivocal request to have his personal attorney present.[6] This request was ignored, and

---

[5] Preceding the deposition, Attorney Mook wrote to plaintiffs' counsel stating that if Kristopher's treating physicians—Dr. Humbyrd included—were not designated as trial experts then he would "proceed to notice these depositions as fact witnesses only." The plaintiffs' counsel later advised Attorney Mook that the treating physicians would be fact witnesses and not experts.

[6] Doctor Humbyrd stated: "If I were going to respond to that question, I would want counsel of my own representing me before I respond to it, and I do not have counsel present. I was subpoenaed to testify regarding my records, which I have done, I think very adequately, and I think very clearly, and I think I've spelled it out. So to go beyond this point and further

- 32 -

Attorney Mook persisted and posed the same question that had prompted Dr. Humbyrd to request the presence of his personal attorney. Except this time Attorney Mook explicitly asked for a "yes or no" response—as if this would change Dr. Humbyrd's stance on whether the question called for him to give an expert opinion.

Instead of acknowledging that Dr. Humbyrd was noticed purely as a fact witness and, therefore, could not be compelled to give an expert opinion, Attorney Mook issued the following admonition:

> "I just want to warn you, Doctor—not warn you. I just want to say on the record that I disagree with your impression of the legal significance of this question. We may well have to go before a judge, ask the judge to make a decision about this issue, that series of questions. If the judge rules in favor of my view of the question, then we will require to have you come back and ask you maybe five minutes of questions on that issue, or you can answer it on the record, however you can, and whether or not it's ever admissible later will be decided by a judge.
>
> "But the preferential way that the appeals court says it should be done is that the witness should answer the question, and any fight over the legality of the question and answer can be determined once it's in a transcript, and some judge can decide once at trial or in a proceeding if it's admissible or not. So you can do whichever way you prefer. I'm just saying."

This conduct is improper and amounts to an implied threat to the doctor that he will be further inconvenienced by having to return for "five minutes of questions" if a judge decides the questions should be answered. Tellingly, the witness persisted in his refusal to answer the questions, and the defense has not sought a ruling compelling Dr. Humbyrd to provide further testimony. The position taken by Attorney Mook—that the treating physician must give an

---

conjecture as to any future issues regarding this patient, who I'm currently not treating, is beyond the scope of what is requested of me, as the subpoenaed person here."

expert opinion against his will—mirrors the strict adherence to <u>Kelvey v. Coughlin</u>, 625 A.2d 775 (R.I. 1993) that the majority opinion espouses. I disagree with this reasoning and suggest that it ignores an important part of our discovery jurisprudence and fails to acknowledge <u>Ondis</u> and <u>Sousa</u>.

Here, Dr. Humbyrd was subpoenaed purely as a fact witness. Yet, questions were posed seeking his expert opinion. Clearly this is contrary to our well-established law as set forth in <u>Sousa</u> and <u>Ondis</u>. By implicitly elevating the holding of <u>Kelvey</u> over the safeguards announced in <u>Sousa</u> and <u>Ondis</u>, the Court is creating a hard-and-fast rule that does not serve the bar or the bench and leaves counsel in a quandary about terminating a deposition of their client's treating physician based on opposing counsel's defiance of our settled law. <u>Kelvey</u> addressed whether opposing counsel can instruct a witness not to answer a question. In this case, Dr. Humbyrd refused to answer these inappropriate questions, rightfully, I conclude. Doctor Humbyrd had an absolute right not to answer questions that sought an expert opinion, yet the majority opinion criticizes plaintiffs' counsel for not standing mute and employs this criticism as grounds for reversing the trial justice. Lawyers are not potted plants and it is not in the nature of experienced trial lawyers to remain silent while another lawyer tramples on the rights of their client's treating physician. We should not require that they do so.

Furthermore, the alleged <u>Kelvey</u> violation committed by plaintiffs' counsel in no way should be considered a mitigating factor when examining the conduct of Attorney Mook. Whether or not plaintiffs' attorney elected to stop the deposition pursuant to Rule 30(d)(3) of the Superior Court Rules of Civil Procedure[7] has no bearing on the fact that the questioning by

---

[7] Rule 30(d)(3) of the Superior Court Rules of Civil Procedure provides:

Attorney Mook was improper and deceitful. Stated differently, our decision in Kelvey does not give an attorney carte blanche to question a witness regarding improper topics or require a fact witness to render expert opinions only to postpone the resolution of the admissibility until the time of trial. That does not un-ring the bell and is small comfort to those who practice in the arena. Thus, even if the proper procedure was to stop the deposition to obtain a ruling from a Superior Court justice—a course of action suggested by plaintiffs' counsel but rebuffed by Attorney Mook—the failure to do so does not absolve the conduct of Attorney Mook. I can think of no more inappropriate line of questioning than trying to force a fact witness to answer questions requiring expert opinion in contravention of our well-established precedent. Sousa, 519 A.2d at 1135-36; Ondis, 497 A.2d at 18. On this basis alone, I believe that the trial justice did not abuse her discretion in deciding to revoke the pro hac vice admission of Attorney Mook. The fact that Attorney Mook did not pose hypothetical questions to Dr. Humbyrd, as the majority notes, is of no moment to this analysis; as the witness stated, the questioning sought "further conjecture as to any future issues regarding [Kristopher]." This is opinion testimony.

While Attorney Mook's questioning of Dr. Humbyrd provided the trial justice with ample basis to revoke Attorney Mook's pro hac vice admission, the manner in which Attorney Mook conducted the depositions of Kristopher, Teresa, and Timothy and comported himself before the trial justice supplied further evidence warranting the revocation. The trial justice conducted a thorough review of the questions that she deemed inappropriate and afforded

"At any time during a deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending or the court in the county where the deposition is being taken may order the officer or examining attorney conducting the examination to cease forthwith from taking the deposition or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c)."

Attorney Mook ample opportunity to explain why these questions could lead to the discovery of admissible evidence. This exchange spanned twelve pages of the hearing transcript. Two weeks later, when rendering her decision, the trial justice stated that:

> "[a]t the hearing * * * the [c]ourt attempted to elicit from [Attorney] Mook a legitimate basis for the questions. [Attorney] Mook addressed that issue again today. The [c]ourt is not satisfied and was not satisfied two weeks ago with his explanation and find that they were disingenuous. I reject them."

The trial justice's conclusion that Attorney Mook's conduct was "outrageous and egregious" and his explanations "disingenuous" demonstrates to me that she carefully considered whether revoking Attorney Mook's pro hac vice admission was warranted. Consequently, I agree with the Superior Court justice's conclusion that the questioning was plainly improper, and I cannot agree with the majority's characterization that it was merely "unorthodox." Additionally, the trial justice enunciated that her decision was based upon "a very significant and sufficiently lengthy record[.]" See Williams & Connolly, L.L.P. v. People for the Ethical Treatment of Animals, Inc., 643 S.E.2d 136, 148 (Va. 2007) (concluding that circuit court did not abuse its discretion in revoking pro hac vice admission of attorney). It is apparent from a review of the record that the trial justice properly exercised her discretion.

Furthermore, it is evident that the trial justice acted with due diligence by proceeding in the manner she did and making detailed and appropriate record findings. After a thorough search of the law of other jurisdictions on this distasteful topic, it is evident that appellate courts vacate such revocation orders for two primary reasons:[8] (1) the pro hac vice attorney was not given adequate notice and hearing; or (2) in a criminal case, the client's Sixth Amendment right to

---

[8] Other than decisions based on the two identified grounds, there is a dearth of case law reversing revocation of pro hac vice admissions on abuse-of-discretion grounds.

counsel of his or her own choosing was not properly considered. Here, the trial justice appropriately dealt with both of these concerns.

First, she conducted an initial hearing on September 18, 2012. At the conclusion of this hearing she stated, "I feel that because I may revoke your pro hac vice status, I want to give you a greater opportunity to respond and to engage counsel if you so choose. Therefore, as it relates to this motion, I'm continuing it for further hearing and decision." Two weeks later, the trial justice again gave Attorney Mook the opportunity to respond to the alleged egregious conduct.[9] Only after this hearing did the trial justice render her decision.

Second, the trial justice concluded that Attorney Mook's clients would not be prejudiced because local counsel was able to take over as lead counsel. Although the trial justice did not undertake a Sixth Amendment balancing test, such is not required in a civil action sounding in tort. See United States v. Nolen, 472 F.3d 362, 375, 376 (5th Cir. 2006) (concluding that a criminal defendant's Sixth Amendment rights must be weighed when revoking pro hac vice admission of a criminal defendant's counsel). I am of the opinion that the trial justice's finding that defendant in this civil action would not be prejudiced by revocation of Attorney Mook's pro hac vice admission was more than sufficient.

Accordingly, I am satisfied that the order revoking Attorney Mook's pro hac vice admission is sufficient to remedy the conduct in this case. However, I am not convinced that the additional requirement that Attorney Mook advise opposing counsel of this matter in any future case serves any useful purpose and is overly burdensome.

---

[9] Attorney Mook took advantage of this opportunity, filing supplemental material, including an affidavit of his educational background and subsequent legal accomplishments. Additionally, he sought to address many of the concerns identified by the Superior Court justice at the earlier hearing. He was found to be disingenuous.

For the foregoing reasons, I would grant certiorari as it relates to the Superior Court justice's revocation of Attorney Mook's <u>pro</u> <u>hac</u> <u>vice</u> admission but would vacate that portion of the order requiring Attorney Mook to present a copy of her decision to opposing counsel in any present or future case where he sought <u>pro</u> <u>hac</u> <u>vice</u> admission in Rhode Island. Consequently, I dissent.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    Kristopher Plante et al. v. Daniel Stack et al. v. Bella Restaurant.

**CASE NO:**    No. 2012-319-M.P.
(PC 10-4432)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    February 6, 2015

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

    Associate Justice Netti C. Vogel

**ATTORNEYS ON APPEAL:**

    For Plaintiff:  Mark S. Mandell, Esq.

    For Defendants:  Brian C. Newberry, Esq.